IN THE
UNITED STATES COURT OF FEDERAL CLAIMS

C.A.No. 03-1673C
Judge Braden

PRO-MECH USA, INC.

Plaintiff,

vs.

THE UNITED STATES OF AMERICA

Defendant.

**PLAINTIFF PRO-MECH USA'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT**

Edward J. Tolchin, Esquire
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive
Suite 300
Fairfax, Virginia 22030
(703) 385-9500
(703) 385-9893 (Facsimile)
Counsel for Plaintiff Pro-Mech USA, Inc.

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF QUESTIONS INVOLVED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

UNDISPUTED MATERIAL FACTS.............................................. . . . . . . . . . . . . . . . . . . . . . . .2

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

A. The Standards for Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

B. The Government is Obligated To Pay Pro-Mech's Invoices Under the Contract. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

C. The Government's Claim About Contract Abandonment is Without Legal Merit . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

# TABLE OF AUTHORITIES

**Cases:** **Page No.**

Adickes v. S. H. Kress & Co., 398 U.S. 144 (1970)....6

Anderson v. Liberty Lobby, Inc., 477 U.S. 242(1986)....6,7

Applied Companies v. United States, 144 F.3d 1470, (Fed. Cir. 1998)....11

Avenal v. United States, 100 F.3d 933(Fed. Cir. 1996)....6

Becho, Inc. v. United States, 47 Fed. Cl. 595(2000)....7

Brooklyn Queens Screen Mfg. Co. v. United States, 97 Ct. Cl. 532(1942)....12

Canal Company v. Gordon, 73 U.S. (6 Wall) 561 (1868)....12

Citizens Bank v. Strumpf , 516 U.S. 16, 19 (1995)....11

Creppel v. United States, 41 F.3d 627(Fed. Cir. 1994)....6

Curtis v. United States, 144 Ct. Cl. 194, 168 F. Supp. 213 (1958) *cert. denied*, 361 U.S. 843, 4 L. Ed. 2d 81, 80 S. Ct. 94 (1959)....6

Electro Plastic Fabrics, Inc., 71-2 BCA ¶ 8996 (ASBCA No.14762)....9

Ford Motor Co. v. United States, 157 F.3d 849(Fed. Cir. 1998....6

Frank Pigeon v. United States, 27 Ct. Cl. 167 (1892) ....7,13

Goodyear Tire & Rubber Co. v. Tire Grading Co., 1994 U.S. Dist. LEXIS 4578 (N.D. Ill. 1994)....10

Hall v. Aqua Queen Mfg., Inc., 93 F.3d 1548 n.3 (Fed. Cir. 1996)....7

Jay v. Sec'y of Dep't of Health and Human Servs., 998 F.2d 979 (Fed. Cir.), *reh'g denied, en banc declined* (1993)....7

John C. Kohler Co. v. United States, 204 Ct. Cl. 777, 498 F.2d 1360 (1974)....10

Johnson v. United States, 49 Fed. Cl. 648 (2001)....7

Johnson v. All-State Construction, Inc., 329 F.3d 848 (Fed. Cir. 2003)....................................9,11

Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986)............................7

Monon Corp. v. Stoughton Trailers, Inc., 239 F.3d 1253 (Fed. Cir. 2001)...................................6

Northern Helex Co. v. United States, 197 Ct. Cl. 118, 455 F.2d 546 (1972)...............................12

Overstreet v. United States, 55 Ct. Cl. 154 (1920)...........................................................12

Suburban Contracting Co. v. United States, 76 Ct. Cl. 533 (1932)..........................................8,12

Telemac Cellular Corp. v. Topp Telecom, Inc., 247 F.3d 1316 (Fed. Cir.)...................................6

Tria-Tech Inc., VACAB No. 598 , 68-1 BCA ¶ 6828...........................................................10

**<u>Federal Statutes</u>**:

FAR 46.407..........................................................................................................4,8

FAR 46.407(g).........................................................................................................8

FAR 52.212-4.........................................................................................................2,3

FAR 52.212-4(d)......................................................................................................8

FAR 52.249.8..........................................................................................................3

Fed. R. Civ. P 56(c)....................................................................................................5

RCFC 56(c)............................................................................................................5

Prompt Payment Act 31 U.S.C. 3903.................................................................................2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRO-MECH USA, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | No: 03-1673C |
| | : | (Judge Braden) |
| THE UNITED STATES | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF PRO-MECH USA'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT**

We ask for summary judgment in this case because the facts are undisputed and plaintiff Pro-Mech USA, Inc. is entitled to judgment in this matter under these facts. Briefly, this case concerns a fixed price, commercial items contract for preventative maintenance on certain equipment at the Jamaica Plains Veterans Hospital in Massachusetts. There are no performance schedules in the contract, but there is a requirement that the Government pay Pro-Mech's monthly invoices, each representing 1/12th of the fixed price amount for the contract. The Government refused to pay invoices for three months, then sent a cure notice to which Pro-Mech timely responded, and then did nothing more other than continue to refuse to pay invoices. When the invoices became four months in arrears, Pro-Mech was forced to abandon the job site because it could not afford to continue to man a job for free.

Pro-Mech sues here for its outstanding invoices. The Government admits it accepted Pro-Mech's services for the period covered by the invoices, but nevertheless refuses to pay them.

We show below that, in these undisputed circumstances, the Government is obligated by the Contract to pay the invoices.

## Statement of Questions Involved

1. Did the Government materially breach its contract with Pro-Mech by failing to pay invoices when due?

2. Was Pro-Mech justified in abandoning work when the Government failed to pay invoices when due?

3. Is the Government liable for the invoices Pro-Mech submitted?

## Statement of the Case

This case is best described by the Statement of Undisputed Material Facts set forth below.

## Undisputed Material Facts

1. On or about July 26, 2002, VAMC entered into Contract No. V523P-7085 ("Contract") with Pro-Mech for mechanical maintenance of a Jamaica Plains, Massachusetts hospital facility for a fixed price of $488,880 during the 12 month base year. The Contract is a contract for commercial items. A copy of the Contract is Exhibit 1.[1]

2. The Contract does not contain a schedule for completion of any activities, but rather states that the work is performed "based upon manufacturers' recommendations, equipment location, application, type, run time and the Contractor's own experience." Exhibit 1 at Scope of Work, ¶ 2, p. 8 of 47.

3. Norbert Cebula was the VAMC contracting officer. Exhibit 8, Excerpts of Deposition of Norbert Cebula at p. 3, lines 20-21; Exhibit 1 (face page).

4. Pursuant to the Contract, invoices were to be submitted monthly. Exhibit 1 at

---

[1] All references to an "Exhibit" refers to the Exhibits to the Plaintiff's Proposed Findings of Uncontroverted Facts filed simultaneously with this Brief.

Addendum to Face Sheet, ¶ 3 (p. 4 of 47). The monthly price during the base year was set forth in the Contract as $40,740 per month, which amount represents 1/12 of the $488,880 base year price. Exhibit 1 at p. 6 of 47.

5. The Contract contains FAR 52.212-4, Contract Terms and Conditions - Commercial Items. Exhibit 1 at p. 24 of 47.

6. FAR 52.212-4 states that the Government has inspection and acceptance rights, but it must exercise them " within a reasonable time after the defect was discovered or should have been discovered." Exhibit 1 at p. 24 of 47.

7. FAR 52.212-4 states that "invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903)." Exhibit 1 at p. 25 of 47.

8. FAR 52.212-4 states that "the Government may terminate this contract, or any part thereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted . . . .." Exhibit 1 at pp. 25-26 of 47.

9. The Contract also contains FAR 52.249-8. This clause provides administrative requirements for defaulting a contractor in addition to those provided in FAR 52.212-4. *See* Exhibit 1 at p. 45 of 47.[2]

10. Pro-Mech submitted monthly invoices in the amount of $40,740 covering the period

[2] Though immaterial, this clause does not belong in this commercial contract as the contract contains FAR 52.212-4 which already has a default provision, quoted in paragraph 8 above.

beginning at contract start up – September 15 2002. VAMC paid the invoice covering the period September 15, 2002 to October 15 2002. Exhibit 2.

11. VAMC paid the invoice covering the period October 15, 2002 to November 15 2002. Exhibit 3.

12. VAMC did not pay the invoice for the period covering November 15, 2002 to December 15, 2002. Exhibit 4.

13. VAMC did not pay the invoice for the period covering December 15, 2002 to January 15, 2003. Exhibit 5.

14. VAMC did not pay the invoice for the period covering January 15, 2003 to February 15, 2003. Exhibit 6.

15. Pro-Mech called Norbert Cebula on numerous occasions asking about payment, and Mr. Cebula would always respond with an evasive answer that the money was being held up by some administrative paperwork issues in another office but, until the end, with an assurance that the invoices would be paid. Declaration of Kathryn Hibbert McLees, attached as Exhibit 7.

16. VAMC did not tell Pro-Mech why it would not pay the invoices. Exhibit 8, Excerpts of Cebula Dep. at p. 32 line 21 to p. 33, line 4.

17. On February 19, 2003, VAMC sent Pro-Mech a cure notice which, for the first time, expressed dissatisfaction with Pro-Mech's work. A copy of the cure notice is Exhibit 9.

18. VAMC stated in its February 19, 2003 cure notice that it was withholding payments pursuant to FAR 46.407. Exhibit 8 at unnumbered p. 9.

19. The February 19 cure notice was the first written correspondence regarding any dissatisfaction with Pro-Mech's work sent by VAMC. Exhibit 8, Excerpts of Cebula Dep. at p.

24, lines 13-23.

20. On March 3, 2003, Pro-Mech timely responded to VAMC's cure notice explaining that the complaints about Pro-Mech's work were without merit. A copy of the response is Exhibit 10.

21. VAMC did not pay the invoice covering the period February 15 to March 15, 2003. Exhibit 11.

22. On March 21, 2003, Pro-Mech submitted a claim for payment of the invoices due to that date. Exhibit 12.

23. On March 24, 2003, Mr. Cebula told Katherine Hibbert of Pro-Mech that the claim was warranted and would be paid. Exhibit 13.

24. On March 31, 2003, Mr. Cebula retracted the statement that the claim would be paid. Exhibit 14.

25. Effective April 1, 2003, Pro-Mech walked off the job because of VAMC's non-payment. Exhibit 14.

26. VAMC has not defaulted Pro-Mech under the Contract, Exhibit 8, Excerpts of Cebula Dep. at p. 33, lines 5-6, though he threatened such "further action." Exhibit 15. With respect to the payments, Mr. Cebula stated that "all payments have been suspend [ed]." *Id.*

27. VAMC did not pay the invoice covering the period March 15, 2003 to April 1, 2003. Exhibit 16.

28. During the period of time from November 15, 2002 to April 1, 2003, VAMC allowed Pro-Mech to have people on the job, allowed Pro-Mech to proceed with the Contract, accepted work from Pro-Mech and the benefit of that work, and never sent Pro-Mech a notice of rejection

of the work. Exhibit 8, Excerpts of Cebula Dep. at p. 33, line 14 to p. 34, line 18.

## Argument

### A. The Standards for Summary Judgment

Rules 56 of the Rules of the United States Court of Federal Claims is patterned after Rule 56 of the Federal Rules of Civil Procedure and is similar both in language and effect. Thus, both rules provide that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157(1970); *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed. Cir.), *reh'g and reh'g en banc denied* (2001); *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001); *Avenal v. United States*, 100 F.3d 933, 936 (Fed. Cir. 1996), *reh'g denied* (1997); *Creppel v. United States*, 41 F.3d 627, 630-31 (Fed. Cir. 1994).

A fact is material if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 247-48; *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d at 1257; *Curtis v. United States*, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), *cert. denied*, 361 U.S. 843, 4 L. Ed. 2d 81, 80 S. Ct. 94 (1959).

When considering a summary judgment, the judge's function is not to weigh the evidence and determine the truth of the facts presented, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 249; *Ford Motor Co. v. United States*, 157

F.3d 849, 854 (Fed. Cir. 1998) (the nature of a summary judgment proceeding is such that the trial judge does not make findings of fact); *Johnson v. United States,* 49 Fed. Cl. 648, 651 (2001); *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 599 (2000). The judge must determine whether the evidence presents a disagreement sufficient to require submission to fact finding, or whether the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 250-52; *Jay v. Sec'y of Dep't of Health and Human Servs.*, 998 F.2d 979, 982 (Fed. Cir.), *reh'g denied, en banc declined* (1993). When the undisputed facts could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial, and the motion must be granted. *See, e.g., Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986); *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1553 n.3 (Fed. Cir. 1996).

Here, the undisputed facts demonstrate that summary judgment in favor of plaintiff Pro-Mech is required as a matter of law.

**B. The Government is Obligated to Pay Pro-Mech's Invoices Under the Contract**

From time immemorial, it has been an unchallenged legal principal that a contractor has a right to have its invoices paid. *Frank Pigeon v. United States*, 27 Ct. Cl. 167 (1892). This right is absolute, and even if the Government may be considering a default termination, that consideration is immaterial to the obligation of the Government to pay contractor invoices. *Id.*

In *Pigeon v. United States*, *supra,* for example, a contracting officer withheld progress payments because he thought that "work was not progressing as it should" and he believed that he should "retain . . . the compensation for the work as an indemnity to the defendants for the faithful performance of the agreement." *Id.* at 173. The court held that the contracting officer's

action to "secure indemnity for the Government against the chances of probable failure upon the part of the contractor" was improper and breached the contract. *Id.* at 175 ("it was not in [the government's] power to withhold the pay in order that it might be secured against the consequences of a probable or possible failure").

Similarly, in *Suburban Contracting Co. v. United States,* 76 Ct. Cl. 533 (1932), the Government refused to pay a contractor contending that his work was late. The Court explained that the Contractor could abandon the work in this circumstance, because the Government's non-payment constituted a material breach of contract:

> At the end of the month of December 1927 the plaintiff requested partial payment for the work performed for that month. At the time of the request the plaintiff was seven days in default of the completion date of the contract. The defendant could have taken over the contract but did not elect to do so. The defendant refused payment on the ground that the plaintiff's default in the completion of the contract by December 24, 1927 . . . . After several demands and upon the defendant's continued refusal to make the monthly partial payment, the plaintiff refused to go on with the contract and abandoned the work on January 11, 1928 . . .
>
> From the inception of the contract the plaintiff had a right to assume that he would be paid according to its terms and the failure and refusal of the defendant to make the payment for the work performed and the material furnished during the month of December justified the plaintiff in refusing to proceed on January 11, 1928.
>
> * * *
>
> The failure and refusal of the Government to make the payment for the work performed and the materials furnished during the month of December was a breach of the contract on the part of the defendant. . . .

*Id.*, 76 Ct. Cl. 542-543.

Indeed, as the Federal Circuit explained recently:

> The Navy first argues that it permissibly withheld the progress payment because it was considering terminating the contract for default, and default termination was imminent. Thus, the Navy's position is that, when the government is about to declare a default termination, it is discharged from its contractual obligation to make progress payments because of the possibility that the contractor owes breach

> damages to the government. We conclude that, in the absence of a contract clause permitting such action, the Navy had no such authority.

*Johnson v. All-State Construction, Inc.*, 329 F.3d 848, 851 (Fed. Cir. 2003).

Here, no clause in the Contract permits the Government to withhold payment from Pro-Mech. In this regard, VAMC cannot rely on FAR 46.407 as a justification for non-payment, as it asserts in its February 19, 2003 cure notice. First, that regulation does not permit non-payment; it does not even address it. Second, the regulation is irrelevant to a commercial items contract, such as the Pro-Mech Contract, which has its own inspection and acceptance clause different from FAR 46.407, and which also does not permit withholding of contract payments. Statement of Undisputed Material Fact ("SUMF") # 6. Third, even if the cited regulation had a withholding subsection and applied to this commercial items contract (neither of which is the case), the cited clause provides explicitly, that "notices of rejection must include the reasons for rejection and be furnished promptly to the contractor. Promptness in giving this notice is essential because, if timely nature of rejection is not furnished, acceptance may in certain cases be implied as a matter of law." FAR 46.407(g). This provision, which is substantively comparable to the inspection/acceptance provision which *is* in the Contract, *see* SUMF #6, precludes VAMC's attempt to back door a yet to occur default, which never occurred in any event in this case, SUMF #26, as a basis for withholding payment.

Indeed, it is settled that the government may not fail to exercise its inspection and acceptance rights, take possession and control of a project, and only then allege defects precluding acceptance. Simply put, the government precluded itself from rejecting deliveries using any means other than that provided in the Contract. *See Electro Plastic Fabrics, Inc.*, 71-2

BCA ¶ 8996 (ASBCA No. 14762). As the Court of Claims explained in *John C. Kohler Co. v. United States*, 204 Ct. Cl. 777, 498 F.2d 1360 (1974), where the government took possession of an item and months later claimed it was defective and had not been accepted because the final inspection had not occurred:

> It is insufficient on the issue of whether a final inspection was made, for defendant to show, long after it placed the boiler in operation, it intended to have a project inspector make an inspection. Since the inspection was defendant's responsibility, and since defendant did take possession of the boiler and place it in operation, defendant is in no position to complain that it did not make a final inspection.

Id., 498 F.2d at 1366. *See also Tria-Tech Inc.*, VACAB No. 598 , 68-1 BCA ¶ 6828 (government's use of equipment constituted acceptance).

In this case, the Government's Contracting Officer admits that during the period of time from November 15, 2002 to April 1, 2003, VAMC allowed Pro-Mech to have people on the job, allowed Pro-Mech to proceed with the Contract, accepted work from Pro-Mech and the benefit of that work, and never sent Pro-Mech a notice of rejection of the work. SUMF #28. The Government's apparent theory about an after-the-fact default, even if it ever occurred, which it did not, SUMF #26, is immaterial as a matter of law.

We also note that, though the Government generally has a common law right of setoff which it could potentially assert to a contracting officer under the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, and thereafter plead in an action,[3] that right has no application here. A setoff could allow an off set of an invoice against current payable debt to the Government, such

---

[3] The failure to plead set-off is, of course, a waiver of that affirmative defense, even if it had existed, *Goodyear Tire & Rubber Co. v. Tire Grading Co.*, 1994 U.S. Dist. LEXIS 4578 (N.D. Ill. 1994), which it did not in this case.

as contractual liquidated damages, provided the Government follows certain notice procedures. *Johnson v. All-State Construction, Inc.*, *supra,* 329 F.3d at 854. Here, however, there was no current payable debt for "non-work," nor could there be, given that there is no liquidated damages clause or even a mandatory work schedule in this Contract. SUMF #2. Moreover, VAMC followed no setoff procedure here whatsoever. It would not even tell Pro-Mech why it would not pay the bills. SUMF #15. Finally, and most critically, the Government announced here that "all payments have been suspend[ed]," SUMF #26, which is the antithesis of any setoff claim. A valid setoff requires "an intent permanently to settle accounts." *Citizens Bank v. Strumpf*, 516 U.S. 16, 19 (1995), and thus "[t]he setoff must be permanent and result in a complete extinguishment of the other party's debt." *Applied Companies v. United States*, 144 F.3d 1470, 1474 (Fed. Cir. 1998). A payment "suspension" which is the action in which VAMC engaged, cannot constitute a "permanent" extinguishment of one debt against "any particular contract obligation," of which none exists here in any event, as a matter of law. *Id.,* 144 F.3d at 1474-1475.

Thus, in this case, the *only* rights that VAMC has were the right to default Pro-Mech, which VAMC never did. SUMF #26. That ends this matter.

**C. The Government's Claim about Contract Abandonment is Without Legal Merit**

From pretrial communications before the Court with the Government, it is clear that the Government's primary defense here is that it could refuse to pay Pro-Mech's invoices because Pro-Mech had an obligation to, but did not, continue to work on the Contract despite non-payment. The basis for this defense is unclear given that Pro-Mech has asked only for payment up to the date it abandoned the Contract, and the Government moreover has asserted no

counterclaim in this matter. Regardless, however, the Government's theory is wrongheaded.

To be sure, the Contract provides that "[t]he Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract. FAR 52-212-4(d) (Exhibit 1 at p. 24 of 47). It is well-settled, however, that the duty to proceed is not absolute and may not be imposed when the Government materially breaches the contract. The Government's failure to make payments due is just such a material breach. *See Northern Helex Co. v. United States*, 197 Ct. Cl. 118, 455 F.2d 546 (1972).

Thus, it is well-settled that failure to make payments when due justifies a contractor's failure to proceed and renders improper a default termination for abandoning the contract. *Canal Company v. Gordon*, 73 U.S. (6 Wall) 561 (1868) (in contract to make and complete a structure with agreements for monthly payments, a failure to make a payment at the time specified is a breach, which justifies the abandonment of the work and entitles the contractor to recover reasonable compensation for the work actually performed); *Northern Helix v. United States*, *supra,* 455 F.2d at 550 (a "total failure to pay over many months" justifies abandonment of contract); *Brooklyn Queens Screen Mfg. Co. v. United States*, 97 Ct. Cl. 532, 536 (1942) ("by reason of such breach [*i.e.*, failing to pay contract amounts due] plaintiff exercised its right to stop work and refuse to proceed further therewith"); *Suburban Contracting Co. v. United States, supra,* 76 Ct. Cl. at 542 ("after several demands and upon the defendant's continued refusal to make the monthly partial payment, the plaintiff [justifiably] refused to go on with the contract and abandoned the work"); *Overstreet v. United States,* 55 Ct. Cl. 154, 173 (1920) ("we are of the opinion that there was such unreasonable delay in making this payment as amounted to a breach of the contract and justified the contractor in abandoning the work and rescinding the

contract"). As explained by the Court of Claims:

> . . . [The Contractor] had the right to assume from the inception of the work that he would be paid according to the requirement of the contract; and the failure of the Government to pay justified him in refusing to proceed on the 5th of October 1881. Whatever might have been his faults up to that time, the Government having permitted him to proceed, having accepted the performance of the contract during the month of September, and having received the benefit of his labor during that period, it was not in its power to withhold the pay in order that it might be secured against the consequence of a probable or possible failure. The 10 percent which by the terms of the agreement it had the right to retain measures the limit of its power to secure indemnity.

*Frank Pigeon v. United States*, *supra,* 27 Ct. Cl. at 175-176.

This law is clear, and the Government's defense is without merit.

**Conclusion**

For the foregoing reasons, Pro-Mech is entitled to payment of its outstanding invoices. Accordingly, summary judgment in favor of Pro-Mech should be entered forthwith.

Respectfully Submitted,

s/ Edward J. Tolchin
EDWARD J. TOLCHIN
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, VA 22030
(703) 385-9500
(703) 385-9893 (fax)
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of September 2004, a copy of the foregoing Plaintiff's Memorandum in Support of Motion for Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Edward J. Tolchin
Edward J. Tolchin