IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRO-MECH USA, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | No: 03-1673C |
| | : | (Judge Braden) |
| THE UNITED STATES | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S PROPOSED FINDINGS OF UNCONTROVERTED FACTS**

1. On or about July 26, 2002, the Government through its Veterans Administration Medical Center ("VAMC") entered into Contract No. V523P-7085 ("Contract") with plaintiff Pro-Mech USA, Inc. for mechanical maintenance of a Jamaica Plains, Massachusetts hospital facility for a fixed price of $488,880 during the 12 month base year. The Contract is a contract for commercial items. A copy of the Contract is Exhibit 1 hereto.

2. The Contract does not contain a schedule for completion of any activities, but rather states that the work is performed "based upon manufacturers' recommendations, equipment location, application, type, run time and the Contractor's own experience." Exhibit 1 at Scope of Work, ¶ 2, p. 8 of 47.

3. Norbert Cebula was the VAMC contracting officer. Exhibit 8, Excerpts of Deposition of Norbert Cebula at p. 3, lines 20-21; Exhibit 1 hereto (face page).

4. Pursuant to the Contract, invoices were to be submitted monthly. Exhibit 1 at Addendum to Face Sheet, ¶ 3 (p. 4 of 47). The monthly price during the base year was set forth in the Contract as $40,740 per month, which amount represents 1/12 of the $488,880 base year price. Exhibit 1 at p. 6 of 47.

5. The Contract contains FAR 52.212-4, Contract Terms and Conditions - Commercial Items. Exhibit 1 at p. 24 of 47.

6. FAR 52.212-4 states that the Government has inspection and acceptance rights, but it must exercise them " within a reasonable time after the defect was discovered or should have been discovered." Exhibit 1 at p. 24 of 47.

7. FAR 52.212-4 states that "invoices will be handled in accordance with the Prompt Payment Act (31 U.S.C. 3903)." Exhibit 1 at p. 25 of 47.

8. FAR 52.212-4 states that "the Government may terminate this contract, or any part thereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted . . . .." Exhibit 1 at pp. 25-26 of 47.

9. The Contract also contains FAR 52.249-8. This clause provides administrative requirements for defaulting a contractor in addition to those provided in FAR 52.212-4. *See* Exhibit 1 at p. 45 of 47.[1]

10. Pro-Mech submitted monthly invoices in the amount of $40,740 covering the period beginning at contract start up – September 15 2002. VAMC paid the invoice covering the period September 15, 2002 to October 15 2002. Exhibit 2 hereto.

11. VAMC paid the invoice covering the period October 15, 2002 to November 15 2002.

---

[1] Though immaterial, this clause does not belong in this commercial contract as the contract contains FAR 52.212-4 which already has a default provision, quoted in paragraph 8 above.

Exhibit 3 hereto.

12. VAMC did not pay the invoice for the period covering November 15, 2002 to December 15, 2002. Exhibit 4 hereto.

13. VAMC did not pay the invoice for the period covering December 15, 2002 to January 15, 2003. Exhibit 5 hereto.

14. VAMC did not pay the invoice for the period covering January 15, 2003 to February 15, 2003. Exhibit 6 hereto.

15. Pro-Mech called Norbert Cebula on numerous occasions asking about payment, and Mr. Cebula would always respond with an evasive answer that the money was being held up by some administrative paperwork issues in another office but, until the end, with an assurance that the invoices would be paid. Declaration of Kathryn Hibbert McLees, attached as Exhibit 7 hereto.

16. VAMC did not tell Pro-Mech why it would not pay the invoices. Exhibit 8, Excerpt of Cebula Dep. at p. 32 line 21 to p. 33, line 4.

17. On February 19, 2003, VAMC sent Pro-Mech a cure notice which, for the first time, expressed dissatisfaction with Pro-Mech's work. A copy of the cure notice is Exhibit 9 hereto.

18. VAMC stated in its February 19, 2003 cure notice that it was withholding payments pursuant to FAR 46.407. Exhibit 9 at unnumbered p. 8.

19. The February 19 cure notice was the first written correspondence regarding any dissatisfaction with Pro-Mech's work sent by VAMC. Exhibit 8, Excerpt of Cebula Dep. at p. 24, lines 13-23.

20. On March 3, 2003, Pro-Mech timely responded to VAMC's cure notice explaining

that the complaints about Pro-Mech's work were without merit. A copy of the response is Exhibit 10 hereto.

21. VAMC did not pay the invoice covering the period February 15 to March 15, 2003. Exhibit 11 hereto.

22. On March 21, 2003, Pro-Mech submitted a claim for payment of the invoices due to that date. Exhibit 12 hereto.

23. On March 24, 2003, Mr. Cebula told Katherine Hibbert of Pro-Mech that the claim was warranted and would be paid. Exhibit 13 hereto.

24. On March 31, 2003, Mr. Cebula retracted the statement that the claim would be paid. Exhibit 14 hereto.

25. Effective April 1, 2003, Pro-Mech walked off the job because of VAMC's non-payment. Exhibit 14 hereto.

26. VAMC has not defaulted Pro-Mech under the Contract, Exhibit 8, Excerpt of Cebula Dep. at p. 33, lines 5-6, though he threatened such "further action." Exhibit 15 hereto. With respect to the payments, Mr. Cebula stated that "all payments have been suspend [ed]." *Id.*

27. VAMC did not pay the invoice covering the period March 15, 2003 to April 1, 2003. Exhibit 16 hereto.

28. During the period of time from November 15, 2002 to April 1, 2003, VAMC allowed Pro-Mech to have people on the job, allowed Pro-Mech to proceed with the Contract, accepted work from Pro-Mech and the benefit of that work, and never sent Pro-Mech a notice of rejection

of the work. Exhibit 8, Excerpt of Cebula Dep. at p. 33, line 14 to p. 34, line 18.

Respectfully Submitted,

s/ Edward J. Tolchin
EDWARD J. TOLCHIN
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, VA 22030
(703) 385-9500
(703) 385-9893 (fax)
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of September 2004, a copy of the foregoing Plaintiff's Proposed Findings of Uncontroverted Facts was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Edward J. Tolchin
Edward J. Tolchin

SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS
OFFEROR TO COMPLETE BLOCKS 12, 17, 23, 24, 30

PAGE 1 OF

| CONTRACT NO. | AWARD/EFF. DATE | 4. ORDER NO. | MODIFICATION NO. | SOLICITATION NO. | 6. SOLICITATION ISSUE DATE |
|---|---|---|---|---|---|
| V523P-7085 | 9/15/02 | 523-C33011 | | RFP523-117-02 | 14 June 2002 |

FOR SOLICITATION INFORMATION CALL: a. NAME Norbert J. Cebula; b. TELEPHONE NO. (No Collect Calls) (617) 232-9500 ext 5523; 8. OFFER DUE DATE/LOCAL TIME 14 July 2002

ISSUED BY — CODE

Department of Veterans Affairs
Boston Healtcare System
150 South Huntington Avenue
Boston, MA 02130

DEPOSITION EXHIBIT
Cebula #1
dfg 8-19-04
PENGAD 800-631-6989

10. THIS ACQUISITION IS
[ ] UNRESTRICTED
[x] SET ASIDE: 100 % FOR
[x] SMALL BUSINESS
[ ] SMALL DISADV. BUSINESS
[ ] 8(A)
NAICS: 811310
SIZE STANDARD: $5.0 mil

11. DELIVERY FOR FOB DESTINATION UNLESS BLOCK IS MARKED
[X] SEE SCHEDULE

12. DISCOUNT TERMS N/A

[ ] 13a. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)

13b. RATING N/A

14. METHOD OF SOLICITATION [ ] RFQ [ ] IFB [X] RFP

5. DELIVER TO — CODE

Department of Veterans Affairs
Boston Healthcare System
150 South Huntington Avenue
Boston, MA 02130

16. ADMINISTRERED BY — CODE

Department of Veterans Affairs
Boston Healthcare System
150 South Huntington Avenue
Boston, MA 02130

7a. CONTRACTOR/OFFEROR — CODE — FACILITY CODE

PRO-MECH USA, INC
122 RAILROAD DRIVE
IVYLAND PA 18974
TELEPHONE NO. 1-877-909-5500

[ ] 17b. CHECK IF REMITTANCE IS DIFFERENT AND PUT SUCH ADDRESS IN OFFER

18a. PAYMENT WILL BE MADE BY — CODE

Fiscal Office
Boston Healthcare System
150 South Huntington Avenue
Boston, MA 02130

18b. SUBMIT INVOICES TO ADDRESS SHOWN IN BLOCK 18a UNLESS BLOCK BELOW IS CHECKED
[ ] SEE ADDENDUM

| 19. ITEM NO. | 20. SCHEDULE OF SUPPLIES/SERVICES | 21. QUANTITY | 22. UNIT | 23. UNIT PRICE | 24. AMOUNT |
|---|---|---|---|---|---|
| | SEE ADDENDUM TO SF 1449 - SUPPLIES, SERVICES PRICES/COST BASE YEAR PLUS 4 OPTION YEARS | | | | 488,880 00 |

25. ACCOUNTING AND APPROPRIATION DATA

26. TOTAL AWARD AMOUNT (For Govt. Use Only)

[X] 27a. SOLICITATION INCORPORATES BY REFERENCE FAR 52.212-1, 52.212-4. FAR 52.212-3 AND 52.212-5 ARE ATTACHED. ADDENDA [X] ARE [ ] ARE NOT ATTACHED.

[X] 27b. CONTRACT/PURCHASE ORDER INCORPORATES BY REFERENCE FAR 52.212-4. FAR 52.212-5 IS ATTACHED. ADDENDA [X] ARE [ ] ARE NOT ATTACHED

[ ] 28. CONTRACTOR IS REQUIRED TO SIGN THIS DOCUMENT AND RETURN ONE COPIES TO ISSUING OFFICE. CONTRACTOR AGREES TO FURNISH AND DELIVER ALL ITEMS SET FORTH OR OTHERWISE IDENTIFIED ABOVE AND ON ANY ADDITIONAL SHEETS SUBJECT TO THE TERMS AND CONDITIONS SPECIFIED HEREIN.

[ ] 29. AWARD OF CONTRACT: REFERENCE ______ OFFER DATED ______. YOUR OFFER ON SOLICITATION (BLOCK 5), INCLUDING ANY ADDITIONS OR CHANGES WHICH ARE SET FORTH HEREIN, IS ACCEPTED AS TO ITEMS:

30a. SIGNATURE OF OFFEROR/CONTRACTOR: [signature]

30b. NAME AND TITLE OF SIGNER (TYPE OR PRINT): President

30c. DATE SIGNED: 9-3-02

31a. UNITED STATES OF AMERICA (SIGNATURE OF CONTRACTING OFFICER): [signature]

31b. NAME OF CONTRACTING OFFICER (TYPE OR PRINT): NORBERT J. CEBULA

31c. DATE SIGNED: 9/3/02

32a. QUANTITY IN COLUMN 21 HAS BEEN
[ ] RECEIVED [ ] INSPECTED [ ] ACCEPTED AND CONFORMS TO THE CONTRACT, EXCEPT AS NOTED

32b. SIGNATURE OF AUTHORIZED GOVT. REPRESENTATIVE — 32c. DATE

33. SHIP NUMBER [ ] PARTIAL [ ] FINAL — 34. VOUCHER NUMBER — 35. AMOUNT VERIFIED CORRECT FOR

36. PAYMENT [ ] COMPLETE [ ] PARTIAL [ ] FINAL — 37. CHECK NUMBER

38. S/R ACCOUNT NUMBER — 39. S/R VOUCHER NUMBER — 40. PAID BY

41a. I CERTIFY THIS ACCOUNT IS CORRECT AND PROPER FOR PAYMENT

41b. SIGNATURE AND TITLE OF CERTIFYING OFFICER — 41c. DATE

42a. RECEIVED BY (Print)

42b. RECEIVED AT (Location)

42c. DATE REC'D (YY/MM/DD) — 42d. TOTAL CONTAINERS

EXHIBIT
1
tabbies

AUTHORIZED FOR LOCAL REPRODUCTION

STANDARD FORM 1449 (10-95)
Prescribed by GSA - FAR (48 CFR) 53.212

## Table of Contents

Page

ART I - THE SCHEDULE ........ 1

SOLICITATION/CONTRACT FORM ........ 1

SF 1449 SOLICITATION/CONTRACT/ORDER FOR COMMERCIAL ITEMS ........ 1

CONTINUATION BLOCK ........ 4

2.1 CONTRACT ADMINISTRATION DATA ........ 4

CONTRACT CLAUSES ........ 12

3.1 52.252-2 CLAUSES INCORPORATED BY REFERENCE (FEB 1998) ........ 12
3.2 52.212-1 INSTRUCTIONS TO OFFERORS--COMMERCIAL ITEMS (OCT 2000) ........ 13
3.3 52.212-2 EVALUATION--COMMERCIAL ITEMS (JAN 1999) ........ 15
3.4 52.212-3 OFFEROR REPRESENTATIONS AND CERTIFICATIONS--COMMERCIAL ITEMS (APR 2001) ALTERNATE III (OCT 2000) ........ 16
3.5 52.212-4 CONTRACT TERMS AND CONDITIONS--COMMERCIAL ITEMS (MAR 2001) ........ 24
3.6 52.212-5 CONTRACT TERMS AND CONDITIONS REQUIRED TO IMPLEMENT STATUTES OR EXECUTIVE ORDERS--COMMERCIAL ITEMS (MAY 2001) ........ 26
3.7 52.203-2 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (APR 1985) ........ 29
3.8 52.204-3 TAXPAYER IDENTIFICATION (OCT 1998) ........ 30
3.9 52.209-5 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS (APR 2001) ........ 31
3.10 52.215-6 PLACE OF PERFORMANCE (OCT 1997) ........ 33
3.11 52.215-11 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS (OCT 1997) ........ 33
3.12 52.217-8 OPTION TO EXTEND SERVICES (NOV 1999) ........ 35
3.13 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000) ........ 35
3.14 52.219-1 SMALL BUSINESS PROGRAM REPRESENTATIONS (MAR 2001) ........ 35
3.15 52.219-22 SMALL DISADVANTAGED BUSINESS STATUS (OCT 1999) ........ 37
3.16 52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999) ........ 37
3.17 52.222-25 AFFIRMATIVE ACTION COMPLIANCE (APR 1984) ........ 38
3.18 52.232-33 PAYMENT BY ELECTRONIC FUNDS TRANSFER--CENTRAL CONTRACTOR REGISTRATION (MAY 1999) ........ 38
3.19 52.233-1 DISPUTES (DEC 1998) ........ 40
3.20 52.233-2 SERVICE OF PROTEST (AUG 1996) ........ 41
3.21 52.243-1 CHANGES--FIXED-PRICE (AUG 1987) ........ 41
3.22 52.249-2 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SEP 1996) ........ 42
3.23 52.249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984) ........ 45
3.24 52.232-18 AVAILABILITY OF FUNDS (APR 1984) ........ 46
3.25 VAAR 852.219-70 VETERAN-OWNED SMALL BUSINESS (DEC 1990) ........ 46
3.26 VAAR 852.233-70 PROTEST CONTENT (JAN 1998) ........ 46
3.27 VAAR 852.233-71 ALTERNATIVE PROTEST PROCEDURE (JAN 1998) ........ 47

3.28 VAAR 852.270-1 REPRESENTATIVES OF CONTRACTING OFFICERS (APR 1984) .......... 47
3.29 VAAR 852.270-4 COMMERCIAL ADVERTISING (NOV 1984) .......... 47

# CONTINUATION BLOCK

## 2.1 CONTRACT ADMINISTRATION DATA

(continuation from Standard Form 1449, block 18A.)

1. Contract Administration: All contract administration matters will be handled by the following individuals:

   a. CONTRACTOR:

   b. GOVERNMENT: Contracting Officer
   Department of Veterans Affairs
   Boston Healtcare System
   150 South Huntington Avenue
   Boston, MA 02130

2. CONTRACTOR REMITTANCE ADDRESS: All payments by the Government to the contractor will be made in accordance with:

   [X] 52.232-34, Payment by Electronic Funds Transfer - Other than Central Contractor Registration, or

   [] 52.232-36, Payment by Third Party

3. INVOICES: Invoices shall be submitted in arrears:

   a. Quarterly []

   b. Semi-Annually []

   c. Other [MONTHLY]

4. GOVERNMENT INVOICE ADDRESS: All invoices from the contractor shall be mailed to the following address:

   Fiscal Office
   Boston Healthcare System
   150 South Huntington Avenue
   Boston, MA 02130

OFFERORS MUST COMPLETE AND RETURN ALL INFORMATION DESIGNATED IN 52.212-1, INSTRUCTIONS TO OFFERORS - COMMERCIAL ITEMS, PARAGRAPH b, PRIOR TO THE TIME SPECIFIED IN BLOCK 8 OF SF 1449 IN ORDER TO BE CONSIDERED FOR AWARD.

ACKNOWLEDGMENT OF AMENDMENTS: The offeror acknowledges receipt of amendments to the Solicitation numbered and dated as follows:

| AMENDMENT NO | DATE |
|---|---|
| | |
| | |
| | |

Sealed offers for furnishing the supplies or services in the Schedule will be received at the address specified in Block 9 of SF 1449, or if handcarried, To the address shown in block 15, until the date and time specified in Block 8. CAUTION - LATE Submissions, Modifications, and Withdrawals: See provision 52.212-1. All offers are subject to all terms and conditions of this solicitation.

## ADDENDUM TO SF 1449
## SUPPLIES OR SERVICES, PRICES/COST

| | | | ANNUAL PRICE |
|---|---|---|---|
| **BASE YEAR**<br>August 01, 2002 thru July 31, 2003 | | | |
| Lump Sum Price Statement of Work | mo | $40,740.00 | $488,880.00 ACJ |
| **OPTION YEAR - ONE**<br>August 01, 2003 thru July 31, 2004 | | | |
| Lump Sum Price Statement of Work | mo | $38,800.00 | $465,600.00 ACJ |
| **OPTION YEAR - TWO**<br>August 01, 2004 thru July 31, 2005 | | | |
| Lump Sum Price Statement of work | mo | $38,800.00 | $465,600.00 ACJ |
| **OPTION YEAR - THREE**<br>August 01, 2005 thru July 31, 2006 | | | |
| Lump Sum Price Statement of Work | mo | $38,800.00 | $465,600.00 ACJ |

## OPTION YEAR - FOUR

August 01, 2006 thru
July 31, 2007

| | | | |
|---|---|---|---|
| Lump Sum Price Statement of Work | mo | $38,800.00 | $465,600.00 |

TOTAL (BASE YEAR AND FOUR OPTION PERIODS) $2,351,280.00

Emergency Service - Hourly Rate $ 52.00

Emergency Service includes weekly (non scheduled) hourly rate, weekend hourly rate and holiday hourly rate for the Base Year. Rate will be adjusted for Option Periods. This rate will not be used in price evaluation

SCOPE OF WORK

1. Furnish all labor, materials, equipment and supervision required for the professional maintenance of building environmental and mechanical systems listed in the attached Inventory of Equipment at the Department of Veterans Affairs, Boston Healthcare System, Jamaica Plain Campus, 150 South Huntington Street, Boston, MA. 02130. Please note, Inventory of Equipment may change from time to time during the contract period (reference paragraph #14)

2. The service activities will be directed and scheduled on a regular basis by an Equipment Maintenance Scheduling System, coordinated with the facilities current maintenance program and work order system. The Equipment Scheduling Systems shall be based upon manufactures' recommendations, equipment location, application, type, run time and the Contractor's own experience. The preventive maintenance program will be initiated, scheduled, administered, monitored and updated by the Contractor.

3. The Government shall be informed of the programs progress and the results on a continuing basis via monthly detailed service reports and scheduled meetings between the Contractor and the Government. These meetings shall be scheduled as necessary during the contract and the frequency may vary, depending upon the situation.

4. Typical Testing activities include, but not limited to, testing for excessive vibration, motor winding resistance, refrigerant charge, fan RPM, refrigerant oil (add), water condition, safety controls, crank case heaters and control systems.

5. Typical Inspection activities include, but not limited to, inspecting for worn, failed parts, or doubtful parts, mountings, worn drive couplings, pulley and shaft alignment, oil levels, rotation, cleanliness of parts and equipment, filters, steam, water, oil, and/or refrigerant leaks.

Preventive Maintenance activities are intended to extend equipment life and assure proper operating condition and efficiency. Typical preventive maintenance activities may include, but limited to;

A. Cleaning

Cleaning coil surfaces, fan impellers and blades, electrical contacts, cooling tower baffles, basin sump and float, chiller and condenser tubes.

B. Aligning

Aligning belt drives, drive couplings, and air fins.

C. Calibrating

Calibrating temperature, pressure and humidity controls and safety controls.

D. Tightening

Tightening electrical connections, mounting bolts, pipe clamps, refrigerant piping fittings and damper sections.

E. Adjusting

Adjusting belt tension, refrigerant charge, super heat, fan RPM, water and chemical feed and feed rate, gas pressure, set point of controls and limits, compressor cylinder unloaders, damper, and sump floats, damper actuators,

linkages and valve actuator motors, thermostats, pressure switches both pneumatic and electric.

F. Lubricating -

Lubricating motors, fan and damper bearings, valve stems, damper linkages and fan vane linkage

G. Painting

Painting for corrosion control as directed by the scheduling system and on and as needed basis.

H. Filters/Dryers

Filters are to be changed on an as needed basis, however, all filters will be changed not less than four times per year. HEPA filters changed once per year or as specified by the manufacture

7. If items are discovered during testing, inspection and maintenance phases of this project, the Contractor shall **REPAIR OR REMOVE AND REPLACE** worn or doubtful components and/or parts. The Contractor shall provide components, parts and supplies required to keep the equipment operating properly and efficiently at no additional cost to the Government.

8. In the event that components or repairs fail because of lack of knowledge or improper workmanship, the Contractor shall make whatever repairs are necessary in order to bring the equipment to the proper operating state at no cost to the Government.
Any damages will be borne by the Contractor

9. This Contract applies only to the maintainable portions of the system(s). Repair or replacement of non-maintainable parts, including but not limited to, duct work, main power service and electrical wiring on the line side of the equipment demand switches, piping, tube bundles, valve bodies unless they are an integral part of the actuator, structural supports and coils (reference paragraph #8)

10. The Contractor will not be required to move, replace or alter any part of the building structure in performance of this Contract.

11. In addition to those items listed above in paragraph # 9, this Contract does not include responsibility for the design of the system, obsolescence, removal and installation of valve bodies and dampers, repair or replacement necessitated by freezing beyond the Contractor's control despite proper shutdown/winterization, weather, electrical power failure, burned out main or branch fuses, low domestic water pressure, vandalism, misuse or abuse of the system(s), negligence of others (including the Government), failure of the Government to properly operate the system(s), requirements of governmental regulatory or insurance agencies, or other causes beyond the control of the Contractor.

12. If a trouble call is made at the Government's request and inspection indicates a condition which is not covered under this Contract, the Contractor may charge the Government at the rate then in effect for such service. The Contractor must advise the Contracting Officers Technical (COTR) immediately on discovery of ıch conditions and before any changes are made. Any additional charges require the approval of the Contracting Officer in order for the Contractor to receive payment for these changes under the terms of this contract.

13. Any alteration to, or deviation from, this Contract involving extra work, cost of labor and material will become an extra charge (fixed price amount to be negotiated on a time and material basis at the Contractor's .tes then in effect). As noted above, any additional charges require the approval of the Contracting Officer in order for the Contractor to receive payment for these changes under the terms of this contract.

14. Whenever there is a need to add or delete equipment to the Inventory of Equipment covered by this contract, the Contracting Officer will make an equitable adjustment to the contract to cover such changes (Reference paragraph # 13) The amount of the equitable adjustment will be based on the price breakdown provided by the Contractor **after** ward. (reference paragraph #15).

15. Subsequent to award of this contract, the Contractor shall provide to the Government unit price for each item listed in the Inventory of Equipment. The prices of each individual item shall equal the annual contract amount. These prices will serve as the bases for contract modification.

16. The Government shall permit only the Contractor's personnel or agent to perform the work included in the Scope of Work in this contract. Should anyone other than the Contractor's personnel perform such work, the Contracting Officer may eliminate the involved item of equipment from inclusion in this contract. In the event personnel other than the Contractor's perform work, which results in damage to the equipment, and the Contractor is requested to repair such damage the Contracting Officer will make an equitable adjustment for this work which would be considered over and above the Contract. The Contractor shall not work on any equipment that is under warranty, if that work would void the warranty. The Contractor will coordinate with Equipment Manufactures before any work is started on warranty items.

17. The Government shall permit the Contractor free and timely access to areas and equipment and allow the ontractor to start and stop the equipment as necessary to perform required services. The Contractor shall schedule such services in a reasonable manner, consistent with the fact that this facility is a medical center and in a manner, which is least disruptive to the normal operation of a medical center.

18. All planned work under this contract will be performed during normal working hours, which are Monday thru Friday from 7:30 AM till 4:00 PM. The Contractor shall allow for unscheduled work resulting from abnormal conditions. The Contractor shall **include 200 man-hours** in the annual price. The hourly rate for "Emergency Services" included in "Supplies or Services and Prices/Costs will be used to negotiate unscheduled work resulting from abnormal conditions in excess of the 200 man hours included in the annual price.