[] (20) 52.225-5, Trade Agreements (19 U.S.C. 2501, et seq., 19 U.S.C. 3301 note).

[X] (21) 52.225-13, Restriction on Certain Foreign Purchases (E.O. 12722, 12724, 13059, 13067, 13121, and 13129).

[] (22) 52.225-15, Sanctioned European Union Country End Products (E.O. 12849).

[] (23) 52.225-16, Sanctioned European Union Country Services (E.O. 12849).

[X] (24) 52.232-33, Payment by Electronic Funds Transfer-- Central Contractor Registration (31 U.S.C. 3332).

[] (25) 52.232-34, Payment by Electronic Funds Transfer-- Other than Central Contractor Registration (31 U.S.C. 3332).

[] (26) 52.232-36, Payment by Third Party (31 U.S.C. 3332).

[] (27) 52.239-1, Privacy or Security Safeguards (5 U.S.C. 552a).-

[] (28)(i) 52.247-64, Preference for Privately Owned U.S.- Flag Commercial Vessels (46 U.S.C. 1241).

[] (ii) Alternate I of 52.247-64.

(c) The Contractor shall comply with the FAR clauses in this paragraph (c), applicable to commercial services, which the Contracting Officer has indicated as being incorporated in this contract by reference to implement provisions of law or executive orders applicable to acquisitions of commercial items or components:

[Contracting Officer check as appropriate.]

[X] (1) 52.222-41, Service Contract Act of 1965, As amended (41 U.S.C. 351, et seq.).

[X] (2) 52.222-42, Statement of Equivalent Rates for Federal Hires (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

[X] (3) 52.222-43, Fair Labor Standards Act and Service Contract Act--Price Adjustment (Multiple Year and Option Contracts) (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

[] (4) 52.222-44, Fair Labor Standards Act and Service Contract Act--Price Adjustment (29 U.S.C. 206 and 41 U.S.C. 351, et seq.).

[] (5) 52.222-47, SCA Minimum Wages and Fringe Benefits Applicable to Successor Contract Pursuant to Predecessor Contractor Collective Bargaining Agreement (CBA) (41 U.S.C. 351, et seq.).

(d) Comptroller General Examination of Record. The Contractor shall comply with the provisions of this paragraph (d) if this contract was awarded using other than sealed bid, is in excess of the simplified acquisition threshold, and does not contain the clause at 52.215-2, Audit and Records--Negotiation.

(1) The Comptroller General of the United States, or an authorized representative of the Comptroller General, shall have access to and right to examine any of the Contractor's directly pertinent records involving transactions related to this contract.

(2) The Contractor shall make available at its offices at all reasonable times the records, materials, and other evidence examination, audit, or reproduction, until 3 years after final payment under this contract or for any shorter period specified in FAR Subpart 4.7, Contractor Records Retention, of the other clauses of this contract. If this contract is completely or partially terminated, the records relating to the work terminated shall be made available for 3 years after any resulting final termination settlement. Records relating to appeals under the disputes clause or to litigation or the

settlement of claims arising under or relating to this contract shall be made available until such appeals, litigation, or ims are finally resolved.

(3) As used in this clause, records include books, documents, accounting procedures and practices, and other data, regardless of type and regardless of form. This does not require the Contractor to create or maintain any record that the Contractor does not maintain in the ordinary course of business or pursuant to a provision of law.

(e) Notwithstanding the requirements of the clauses in paragraphs (a), (b), (c) or (d) of this clause, the Contractor is not required to include any FAR clause, other than those listed below (and as may be required by an addenda to this paragraph to establish the reasonableness of prices under Part 15), in a subcontract for commercial items or commercial components--

(1) 52.222-26, Equal Opportunity (E.O. 11246);

(2) 52.222-35, Affirmative Action for Disabled Veterans and Veterans of the Vietnam Era (38 U.S.C. 4212);

(3) 52.222-36, Affirmative Action for Workers with Disabilities (29 U.S.C. 793);

(4) 52.247-64, Preference for Privately Owned U.S.-Flag Commercial Vessels (46 U.S.C. 1241) (flow down not required for subcontracts awarded beginning May 1, 1996); and

(5) 52.222-41, Service Contract Act of 1965, As Amended (41 U.S.C. 351, et seq.).

(End of Clause)

## .7 52.203-2 CERTIFICATE OF INDEPENDENT PRICE DETERMINATION (APR 1985)

(a) The offeror certifies that--

(1) The prices in this offer have been arrived at independently, without, for the purpose of restricting competition, any consultation, communication, or agreement with any other offeror or competitor relating to--

(i) those prices;

(ii) the intention to submit an offer;, or

(iii) the methods or factors used to calculate the prices offered;

(2) The prices in this offer have not been and will not be knowingly disclosed by the offeror, directly or indirectly, to any other offeror or competitor before bid opening (in the case of a sealed bid solicitation) or contract award (in the case of a negotiated solicitation) unless otherwise required by law; and

(3) No attempt has been made or will be made by the offeror to induce any other concern to submit or not to submit an offer for the purpose of restricting competition.

(b) Each signature on the offer is considered to be a certification by the signatory that the signatory--

(1) Is the person in the offeror's organization responsible for determining the prices being offered in this bid or proposal, and that the signatory has not participated and will not participate in any action contrary to subparagraphs (a)(1) through (a)(3) above; or

Case 1:03-cv-01673-SGB Document 19-3 Filed 09/10/2004 Page 3 of 12

(2) (i) Has been authorized, in writing, to act as agent for the following principals in certifying that those principals have not participated, and will not participate in any action contrary to subparagraphs (a)(1) through (a)(3) above

________________________________________

________________________________________

________________________________________

[Insert full name of person(s) in the offeror's organization responsible for determining the prices offered in the bid or proposal, and the title of his or her position in the offeror's organization];

(ii) As an authorized agent, does certify that the principals named in subdivision (b)(2)(i) above have not participated, and will not participate, in any action contrary to subparagraphs (a)(1) through (a)(3) above; and

(iii) As an agent, has not personally participated, and will not participate, in any action contrary to subparagraphs (a)(1) through (a)(3) above.

(c) If the offeror deletes or modifies subparagraph (a)(2) of this provision, the offeror must furnish with its offer a signed statement setting forth in detail the circumstances of the disclosure.

(End of Provision)

## 3.8 52.204-3 TAXPAYER IDENTIFICATION (OCT 1998)

(a) Definitions.

Common parent, as used in this provision, means that corporate entity that owns or controls an affiliated group of corporations that files its Federal income tax returns on a consolidated basis, and of which the offeror is a member.

Taxpayer Identification Number (TIN), as used in this provision, means the number required by the Internal Revenue Service (IRS) to be used by the offeror in reporting income tax and other returns. The TIN may be either a Social Security Number or an Employer Identification Number.

(b) All offerors must submit the information required in paragraphs (d) through (f) of this provision to comply with debt collection requirements of 31 U.S.C. 7701(c) and 3325(d), reporting requirements of 26 U.S.C. 6041, 6041A, and 6050M, and implementing regulations issued by the IRS. If the resulting contract is subject to the payment reporting requirements described in Federal Acquisition Regulation (FAR) 4.904, the failure or refusal by the offeror to furnish the information may result in a 31 percent reduction of payments otherwise due under the contract.

(c) The TIN may be used by the Government to collect and report on any delinquent amounts arising out of the offeror's relationship with the Government (31 U.S.C. 7701(c)(3)). If the resulting contract is subject to the payment reporting requirements described in FAR 4.904, the TIN provided hereunder may be matched with IRS records to verify the accuracy of the offeror's TIN.

(d) Taxpayer Identification Number (TIN).

[ ] TIN:. __________________________

[ ] TIN has been applied for.

[ ] TIN is not required because:

[ ] Offeror is a nonresident alien, foreign corporation, or foreign partnership that does not have income effectively connected with the conduct of a trade or business in the United States and does not have an office or place of business or a local paying agent in the United States;

[ ] Offeror is an agency or instrumentality of a foreign government;

[ ] Offeror is an ~~agency~~ or instrumentality of the Federal Government.

(e) Type of organization.

[ ] Sole proprietorship;

[ ] Partnership;

[ ] Corporate entity (not tax-exempt);

[ ] Corporate entity (tax-exempt);

[ ] Government entity (Federal, State, or local);

[ ] Foreign government;

[ ] International organization per 26 CFR 1.6049-4;

[ ] Other ______________________________

(f) Common parent.

[ ] Offeror is not owned or controlled by a common parent as defined in paragraph (a) of this provision.

[ ] Name and TIN of common parent:

Name ______________________________

TIN ______________________________

(End of Provision)

**3.9 52.209-5 CERTIFICATION REGARDING DEBARMENT, SUSPENSION, PROPOSED DEBARMENT, AND OTHER RESPONSIBILITY MATTERS (APR 2001)**

(a)(1) The Offeror certifies, to the best of its knowledge and belief, that -

(i) The Offeror and/or any of its Principals -

(A) Are [ ] are not [ ] presently debarred, suspended, proposed for debarment, or declared ineligible for the award of contracts by any Federal agency;

(B) Have [ ] have not [ ], within a 3-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain,

or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion or receiving stolen property; and

(C) Are [ ] are not [ ] presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in subdivision (a)(1)(i)(B) of this provision.

(D) Have [ ] have not [ ], within a three-year period preceding this offer, been convicted of or had a civil judgment rendered against them for: commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, state, or local) contract or subcontract; violation of Federal or state antitrust statutes relating to the submission of offers; or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, tax evasion, or receiving stolen property; and

(E) Are [ ] are not [ ] presently indicted for, or otherwise criminally or civilly charged by a governmental entity with, commission of any of the offenses enumerated in subdivision (a)(1)(i)(D) of this provision.

(ii) The Offeror has [ ] has not [ ], within a 3-year period preceding this offer, had one or more contracts terminated for default by any Federal agency.

(2) "Principals," for the purposes of this certification, means officers; directors; owners; partners; and, persons having primary management or supervisory responsibilities within a business entity (e.g., general manager; plant manager; head of a subsidiary, division, or business segment, and similar positions).

THIS CERTIFICATION CONCERNS A MATTER WITHIN THE JURISDICTION OF AN AGENCY OF THE UNITED STATES AND THE MAKING OF A FALSE, FICTITIOUS, OR FRAUDULENT CERTIFICATION MAY RENDER THE MAKER SUBJECT TO PROSECUTION UNDER SECTION 1001, TITLE 18, UNITED STATES CODE.

(b) The Offeror shall provide immediate written notice to the Contracting Officer if, at any time prior to contract award, the Offeror learns that its certification was erroneous when submitted or has become erroneous by reason of changed circumstances.

(c) A certification that any of the items in paragraph (a) of this provision exists will not necessarily result in withholding of an award under this solicitation. However, the certification will be considered in connection with a determination of the Offeror's responsibility. Failure of the Offeror to furnish a certification or provide such additional information as requested by the Contracting Officer may render the Offeror nonresponsible.

(d) Nothing contained in the foregoing shall be construed to require establishment of a system of records in order to render, in good faith, the certification required by paragraph (a) of this provision. The knowledge and information of an Offeror is not required to exceed that which is normally possessed by a prudent person in the ordinary course of business dealings.

(e) The certification in paragraph (a) of this provision is a material representation of fact upon which reliance was placed when making award. If it is later determined that the Offeror knowingly rendered an erroneous certification, in addition to other remedies available to the Government, the Contracting Officer may terminate the contract resulting from this solicitation for default.

(End of Provision)

## 10 52.215-6 PLACE OF PERFORMANCE (OCT 1997)

(a) The offeror or respondent, in the performance of any contract resulting from this solicitation, [ ] intends, [ ] does not intend [check applicable block] to use one or more plants or facilities located at a different address from the address of the offeror or respondent as indicated in this proposal or response to request for information.

(b) If the offeror or respondent checks "intends" in paragraph (a) of this provision, it shall insert in the following spaces the required information:

| Place of performance (street (street address, city, state, county, code) | Name and address of owner and operator of the plant or facility if other than offeror or respondent |
|---|---|
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

(End of Provision)

## 3.11 52.215-11 PRICE REDUCTION FOR DEFECTIVE COST OR PRICING DATA--MODIFICATIONS (OCT 1997)

(a) This clause shall become operative only for any modification to this contract involving a pricing adjustment expected to exceed the threshold for submission of cost or pricing data at FAR 15.403- 4, except that this clause does not apply to any modification if an exception under FAR 15.403-1 applies.

(b) If any price, including profit or fee, negotiated in connection with any modification under this clause, or any cost reimbursable under this contract, was increased by any significant amount because (1) the Contractor or a subcontractor furnished cost or pricing data that were not complete, accurate, and current as certified in its Certificate of Current Cost or Pricing Data, (2) a subcontractor or prospective subcontractor furnished the Contractor cost or pricing data that were not complete, accurate, and current as certified in the Contractor's Certificate of Current Cost or Pricing Data, or (3) any of these parties furnished data of any description that were not accurate, the price or cost shall be reduced accordingly and the contract shall be modified to reflect the reduction. This right to a price reduction is limited to that resulting from defects in data relating to modifications for which this clause becomes operative under paragraph (a) of this clause.

(c) Any reduction in the contract price under paragraph (b) of this clause due to defective data from a prospective subcontractor that was not subsequently awarded the subcontract shall be limited to the amount, plus applicable overhead r ' profit markup, by which--

(1) The actual subcontract; or

(2) The actual cost to the Contractor, if there was no subcontract, was less than the prospective subcontract cost estimate submitted by the Contractor; provided, that the actual subcontract price was not itself affected by defective cost or pricing data.

(d)(1) If the Contracting Officer determines under paragraph (b) of this clause that a price or cost reduction should be made, the Contractor agrees not to raise the following matters as a defense:

(i) The Contractor or subcontractor was a sole source supplier or otherwise was in a superior bargaining position and thus the price of the contract would not have been modified even if accurate, complete, and current cost or pricing data had been submitted.

(ii) The Contracting Officer should have known that the cost or pricing data in issue were defective even though the Contractor or subcontractor took no affirmative action to bring the character of the data to the attention of the Contracting Officer.

(iii) The contract was based on an agreement about the total cost of the contract and there was no agreement about the cost of each item procured under the contract.

(iv) The Contractor or subcontractor did not submit a Certificate of Current Cost or Pricing Data.

(2)(i) Except as prohibited by subdivision (d)(2)(ii) of this clause, an offset in an amount determined appropriate by the Contracting Officer based upon the facts shall be allowed against the amount of a contract price reduction if--

(A) The Contractor certifies to the Contracting Officer that, to the best of the Contractor's knowledge and belief, the Contractor is entitled to the offset in the amount requested; and

(B) The Contractor proves that the cost or pricing data were available before the "as of" date specified on its Certificate of Current Cost or Pricing Data, and that the data were not submitted before such date.

(ii) An offset shall not be allowed if--

(A) The understated data were known by the Contractor to be understated before the "as of" date specified on its Certificate of Current Cost or Pricing Data; or

(B) The Government proves that the facts demonstrate that the contract price would not have increased in the amount to be offset even if the available data had been submitted before the "as of" date specified on its Certificate of Current Cost or Pricing Data.

(e) If any reduction in the contract price under this clause reduces the price of items for which payment was made prior to the date of the modification reflecting the price reduction, the Contractor shall be liable to and shall pay the United States at the time such overpayment is repaid--

(1) Simple interest on the amount of such overpayment to be computed from the date(s) of overpayment to the Contractor to the date the Government is repaid by the Contractor at the applicable underpayment rate effective for each quarter prescribed by the Secretary of the Treasury under 26 U.S.C. 6621(a)(2); and

(2) A penalty equal to the amount of the overpayment, if the Contractor or subcontractor knowingly submitted cost or pricing data that were incomplete, inaccurate, or noncurrent.

(End of Clause)

### 3.12 52.217-8 OPTION TO EXTEND SERVICES (NOV 1999)

The Government may require continued performance of any services within the limits and at the rates specified in the contract. These rates may be adjusted only as a result of revisions to prevailing labor rates provided by the Secretary of Labor. The option provision may be exercised more than once, but the total extension of performance hereunder shall not exceed 6 months. The Contracting Officer may exercise the option by written notice to the Contractor within 60 days.

(End of Clause)

### 3.13 52.217-9 OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000)

(a) The Government may extend the term of this contract by written notice to the Contractor within 60 days; provided that the Government gives the Contractor a preliminary written notice of its intent to extend at least 180 days before the contract expires. The preliminary notice does not commit the Government to an extension.

(b) If the Government exercises this option, the extended contract shall be considered to include this option clause.

(c) The total duration of this contract, including the exercise of any options under this clause, shall not exceed JULY 31, 2004.

(End of Clause)

### 3.14 52.219-1 SMALL BUSINESS PROGRAM REPRESENTATIONS (MAR 2001)

(a)(1) The North American Industry Classification System (NAICS) code for this acquisition is-- 811310.

(2) The small business size standard is $5.0 mil million [average annual receipts for 3 preceding fiscal yrs].

(3) The small business size standard for a concern which submits an offer in its own name, other than on a construction or service contract, but which proposes to furnish a product which it did not itself manufacture, is 500 employees.

(b) Representations. (1) The offeror represents as part of its offer that it [ ] is, [ ] is not a small business concern.

(2) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents, for general statistical purposes, that it [ ] is, [ ] is not, a small disadvantaged business concern as defined in 13 CFR 124.1002.

(3) (Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.) The offeror represents as part of its offer that it [ ] is, [ ] is not a women-owned small business concern.

(4) [Complete only if the offeror represented itself as a small business concern in paragraph (b)(1) of this provision.] The offeror represents as part of its offer that it [ ] is, [ ] is not a veteran-owned small business concern.

(5) [Complete only if the offeror represented itself as a veteran-owned small business concern in paragraph (b)(4) of this provision.] The offeror represents as part of its offer that it [ ] is, [ ] is not a service-disabled veteran-owned small business concern.

( ) Definitions. As used in this provision--

Service-disabled veteran-owned small business concern--

(1) Means a small business concern-- (i) Not less than 51 percent of which is owned by one or more service-disabled veterans or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more service-disabled veterans; and

(ii) The management and daily business operations of which are controlled by one or more service-disabled veterans or, in the case of a veteran with permanent and severe disability, the spouse or permanent caregiver of such veteran.

(2) Service-disabled veteran means a veteran, as defined in 38 U.S.C. 101(2), with a disability that is service-connected, as defined in 38 U.S.C. 101(16).

Small business concern, as used in this provision, means a concern, including its affiliates, that is independently owned and operated, not dominant in the field of operation in which it is bidding on Government contracts, and qualified as a small business under the criteria in 13 CFR Part 121 and the size standard in paragraph (a) of this provision.

Veteran-owned small business concern means a small business concern--

(1) Not less than 51 percent of which is owned by one or more veterans (as defined at 38 U.S.C. 101(2)) or, in the case of any publicly owned business, not less than 51 percent of the stock of which is owned by one or more veterans; and

(2) The management and daily business operations of which are controlled by one or more veterans.

Women-owned small business concern, as used in this provision, means a small business concern--

(1) That is at least 51 percent owned by one or more women; or in the case of any publicly owned business, at least 51 percent of the stock of which is owned by one or more women; and

(2) Whose management and daily business operations are controlled by one or more women.

(d) Notice. (1) If this solicitation is for supplies and has been set aside, in whole or in part, for small business concerns, then the clause in this solicitation providing notice of the set-aside contains restrictions on the source of the end items to be furnished.

(2) Under 15 U.S.C. 645(d), any person who misrepresents a firm's status as a small, HUBZone small, small disadvantaged, or women- owned small business concern in order to obtain a contract to be awarded under the preference programs established pursuant to section 8(a), 8(d), 9, or 15 of the Small Business Act or any other provision of Federal law that specifically references section 8(d) for a definition of program eligibility, shall--

(i) Be punished by imposition of fine, imprisonment, or both;

(ii) Be subject to administrative remedies, including suspension and debarment; and

(iii) Be ineligible for participation in programs conducted under the authority of the Act.

(End of Provision)

3.15 52.219-22 SMALL DISADVANTAGED BUSINESS STATUS (OCT 1999)

(a) General. This provision is used to assess an offeror's small disadvantaged business status for the purpose of obtaining a benefit on this solicitation. Status as a small business and status as a small disadvantaged business for general statistical purposes is covered by the provision at FAR 52.219-1, Small Business Program Representation.

(b) Representations.

(1) General. The offeror represents, as part of its offer, that it is a small business under the size standard applicable to this acquisition; and either--

[ ] (i) It has received certification by the Small Business Administration as a small disadvantaged business concern consistent with 13 CFR 124, Subpart B; and

(A) No material change in disadvantaged ownership and control has occurred since its certification;

(B) Where the concern is owned by one or more disadvantaged individuals, the net worth of each individual upon whom the certification is based does not exceed $750,000 after taking into account the applicable exclusions set forth at 13 CFR 124.104(c)(2); and

(C) It is identified, on the date of its representation, as a certified small disadvantaged business concern in the database maintained by the Small Business Administration (PRO-Net); or

[ ] (ii) It has submitted a completed application to the Small Business Administration or a Private Certifier to be certified as a small disadvantaged business concern in accordance with 13 CFR 124, Subpart B, and a decision on that application is pending, and that no material change in disadvantaged ownership and control has occurred since its application was submitted.

(2) [ ] For Joint Ventures. The offeror represents, as part of its offer, that it is a joint venture that complies with the requirements at 13 CFR 124.1002(f) and that the representation in paragraph (b)(1) of this provision is accurate for the small disadvantaged business concern that is participating in the joint venture. [The offeror shall enter the name of the small disadvantaged business concern that is participating in the joint venture: ____________________________________________.]

(c) Penalties and Remedies. Anyone who misrepresents any aspects of the disadvantaged status of a concern for the purposes of securing a contract or subcontract shall:

(1) Be punished by imposition of a fine, imprisonment, or both;

(2) Be subject to administrative remedies, including suspension and debarment; and

(3) Be ineligible for participation in programs conducted under the authority of the Small Business Act.

(End of Provision)

## 3.16 52.222-22 PREVIOUS CONTRACTS AND COMPLIANCE REPORTS (FEB 1999)

The offeror represents that--

(a) It [ ] has, [ ] has not participated in a previous contract or subcontract subject to the Equal Opportunity clause of this solicitation; the clause originally contained in Section 310 of Executive Order No. 10925, or the clause contained in Section 201 of Executive Order No. 11114;

( ) It [ ] has, [ ] has not filed all required compliance reports; and

(c) Representations indicating submission of required compliance reports, signed by proposed subcontractors, will be obtained before subcontract awards.

(End of Provision)

### 3.17 52.222-25 AFFIRMATIVE ACTION COMPLIANCE (APR 1984)

The offeror represents that--

(a) It [ ] has developed and has on file, [ ] has not developed and does not have on file, at each establishment, affirmative action programs required by the rules and regulations of the Secretary of Labor (41 CFR 60-1 and 60-2), or (b) It [ ] has not previously had contracts subject to the written affirmative action programs requirement of the rules and regulations of the Secretary of Labor.

(End of Provision)

### 3.18 52.232-33 PAYMENT BY ELECTRONIC FUNDS TRANSFER--CENTRAL CONTRACTOR REGISTRATION (MAY 1999)

( .) Method of payment. (1) All payments by the Government under this contract shall be made by electronic funds transfer (EFT), except as provided in paragraph (a)(2) of this clause. As used in this clause, the term "EFT" refers to the funds transfer and may also include the payment information transfer.

(2) In the event the Government is unable to release one or more payments by EFT, the Contractor agrees to either--

(i) Accept payment by check or some other mutually agreeable method of payment; or

(ii) Request the Government to extend the payment due date until such time as the Government can make payment by EFT (but see paragraph (d) of this clause).

(b) Contractor's EFT information. The Government shall make payment to the Contractor using the EFT information contained in the Central Contractor Registration (CCR) database. In the event that the EFT information changes, the Contractor shall be responsible for providing the updated information to the CCR database.

(c) Mechanisms for EFT payment. The Government may make payment by EFT through either the Automated Clearing House (ACH) network, subject to the rules of the National Automated Clearing House Association, or the Fedwire Transfer System. The rules governing Federal payments through the ACH are contained in 31 CFR part 210.

(d) Suspension of payment. If the Contractor's EFT information in the CCR database is incorrect, then the Government need not make payment to the Contractor under this contract until correct EFT information is entered into the CCR database; and any invoice or contract financing request shall be deemed not to be a proper invoice for the purpose of prompt payment under this contract. The prompt payment terms of the contract regarding notice of an improper invoice and delays in accrual of interest penalties apply.

(e) Contractor EFT arrangements. If the Contractor has identified multiple payment receiving points (i.e., more than one remittance address and/or EFT information set) in the CCR database, and the Contractor has not notified the Government

of the payment receiving point applicable to this contract, the Government shall make payment to the first payment receiving point (EFT information set or remittance address as applicable) listed in the CCR database.

(f) Liability for uncompleted or erroneous transfers. (1) If an uncompleted or erroneous transfer occurs because the Government used the Contractor's EFT information incorrectly, the Government remains responsible for--

(i) Making a correct payment;

(ii) Paying any prompt payment penalty due; and

(iii) Recovering any erroneously directed funds.

(2) If an uncompleted or erroneous transfer occurs because the Contractor's EFT information was incorrect, or was revised within 30 days of Government release of the EFT payment transaction instruction to the Federal Reserve System, and--

(i) If the funds are no longer under the control of the payment office, the Government is deemed to have made payment and the Contractor is responsible for recovery of any erroneously directed funds; or

(ii) If the funds remain under the control of the payment office, the Government shall not make payment, and the provisions of paragraph (d) of this clause shall apply.

(g) EFT and prompt payment. A payment shall be deemed to have been made in a timely manner in accordance with the prompt payment terms of this contract if, in the EFT payment transaction instruction released to the Federal Reserve System, the date specified for settlement of the payment is on or before the prompt payment due date, provided the specified payment date is a valid date under the rules of the Federal Reserve System.

(h) EFT and assignment of claims. If the Contractor assigns the proceeds of this contract as provided for in the assignment of claims terms of this contract, the Contractor shall require as a condition of any such assignment, that the assignee shall register in the CCR database and shall be paid by EFT in accordance with the terms of this clause. In all respects, the requirements of this clause shall apply to the assignee as if it were the Contractor. EFT information that shows the ultimate recipient of the transfer to be other than the Contractor, in the absence of a proper assignment of claims acceptable to the Government, is incorrect EFT information within the meaning of paragraph (d) of this clause.

(i) Liability for change of EFT information by financial agent. The Government is not liable for errors resulting from changes to EFT information made by the Contractor's financial agent.

(j) Payment information. The payment or disbursing office shall forward to the Contractor available payment information that is suitable for transmission as of the date of release of the EFT instruction to the Federal Reserve System. The Government may request the Contractor to designate a desired format and method(s) for delivery of payment information from a list of formats and methods the payment office is capable of executing. However, the Government does not guarantee that any particular format or method of delivery is available at any particular payment office and retains the latitude to use the format and delivery method most convenient to the Government. If the Government makes payment by check in accordance with paragraph (a) of this clause, the Government shall mail the payment information to the remittance address contained in the CCR database.

(End of Clause)