5.19 52.233-1 DISPUTES (DEC 1998)

(a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).

(b) Except as provided ~~in the~~ Act, all disputes arising under or related to this contract shall be resolved under this clause.

(c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract. A claim arising under a contract, unlike a claim relating to that contract, is a claim that can be resolved under a contract clause that provides for the relief sought by the claimant. However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $100,000 is not a claim under the Act until certified as required by subparagraph (d)(2) of this clause. A voucher, invoice, or other routine request for payment that is not in dispute when submitted is not a claim under the Act. The submission may be converted to a claim under the Act, by complying with the submission and certification requirements of this clause, if it is disputed either as to liability or amount or is not acted upon in a reasonable time.

(d)(1) A claim by the Contractor shall be made in writing and, unless otherwise stated in this contract, submitted within 6 years after accrual of the claim to the Contracting Officer for a written decision. A claim by the Government against the Contractor shall be subject to a written decision by the Contracting Officer.

(2)(i) The Contractor shall provide the certification specified in paragraph (d)(2)(iii) of this clause when submitting any claim exceeding $100,000.

(ii) The certification requirement does not apply to issues in controversy that have not been submitted as all or part of a claim.

(iii) The certification shall state as follows: "I certify that the claim is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the Contractor believes the Government is liable; and that I am duly authorized to certify the claim on behalf of the Contractor."

(3) The certification may be executed by any person duly authorized to bind the Contractor with respect to the claim.

(e) For Contractor claims of $100,000 or less, the contracting Officer must, if requested in writing by the Contractor, render a decision within 60 days of the request. For Contractor-certified claims over $100,000, the Contracting Officer must, within 60 days, decide the claim or notify the Contractor of the date by which the decision will be made.

(f) The Contracting Officer's decision shall be final unless the contractor appeals or files a suit as provided in the Act.

(g) If the claim by the Contractor is submitted to the Contracting Officer or a claim by the Government is presented to the Contractor, the parties, by mutual consent, may agree to use alternative dispute resolution (ADR). If the Contractor refuses an offer for ADR, the Contractor shall inform the Contracting Officer, in writing, of the Contractor's specific reasons for rejecting the offer.

(h) The Government shall pay interest on the amount found due and unpaid from (1) the date that the Contracting Officer receives the claim (certified, if required); or (2) the date that payment otherwise would be due, if that date is later, until the date of payment. With regard to claims having defective certifications, as defined in (FAR) 48 CFR 33.201, interest shall be paid from the date that the Contracting Officer initially receives the claim. Simple interest on claims shall be paid at the rate, fixed by the Secretary of the Treasury as provided in the ACT, which is applicable to the period during

which the Contracting Officer receives the claim and then at the rate applicable for each 6-month period as fixed by the Treasury Secretary during the pendency of the claim.

(i) The Contractor shall proceed diligently with performance of this contract, pending final resolution of any request for relief, claim, appeal, or action arising under the contract, and comply with any decision of the Contracting Officer.

(End of Clause)

### 3.20 52.233-2 SERVICE OF PROTEST (AUG 1996)

(a) Protests, as defined in section 33.101 of the Federal Acquisition Regulation, that are filed directly with an agency, and copies of any protests that are filed with the General Accounting Office (GAO), shall be served on the Contracting Officer (addressed as follows) by obtaining written and dated acknowledgment of receipt from:

NORBERT J. CEBULA
CONTRACTING OFFICER

Hand-Carried Address:

DEPARTMENT OF VETERANS AFFAIRS
Boston Healthcare System
150 South Huntington Avenue
Boston, MA 02130

Mailing Address:

DEPARTMENT OF VETERANS AFFAIRS
Boston Healthcare System
150 South Huntington Avenue
Boston, MA 02130

(b) The copy of any protest shall be received in the office designated above within one day of filing a protest with the GAO.

(End of Provision)

### 3.21 52.243-1 CHANGES--FIXED-PRICE (AUG 1987)

(a) The Contracting Officer may at any time, by written order, and without notice to the sureties, if any, make changes within the general scope of this contract in any one or more of the following:

(1) Drawings, designs, or specifications when the supplies to be furnished are to be specially manufactured for the Government in accordance with the drawings, designs, or specifications.

(2) Method of shipment or packing.

(3) Place of delivery.

(b) If any such change causes an increase or decrease in the cost of, or the time required for, performance of any part of the work under this contract, whether or not changed by the order, the Contracting Officer shall make an equitable adjustment in the contract price, the delivery schedule, or both, and shall modify the contract.

(c) The Contractor must assert its right to an adjustment under this clause within 30 days from the date of receipt of the written order. However, if the Contracting Officer decides that the facts justify it, the Contracting Officer may receive and act upon a proposal submitted before final payment of the contract.

(d) If the Contractor's proposal includes the cost of property made obsolete or excess by the change, the Contracting Officer shall have the right to prescribe the manner of the disposition of the property.

(e) Failure to agree to any adjustment shall be a dispute under the Disputes clause. However, nothing in this clause shall excuse the Contractor from proceeding with the contract as changed.

(End of Clause)

52.246-4 INSPECTION OF SERVICES--FIXED-PRICE AUG 1996

### 3.22 52.249-2 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (SEP 1996)

(a) The Government may terminate performance of work under this contract in whole or, from time to time, in part if the Contracting Officer determines that a termination is in the Government's interest. The Contracting Officer shall terminate by delivering to the Contractor a Notice of Termination specifying the extent of termination and the effective date.

(b) After receipt of a Notice of Termination, and except as directed by the Contracting Officer, the Contractor shall immediately proceed with the following obligations, regardless of any delay in determining or adjusting any amounts due under this clause:

(1) Stop work as specified in the notice.

(2) Place no further subcontracts or orders (referred to as subcontracts in this clause) for materials, services, or facilities, except as necessary to complete the continued portion of the contract.

(3) Terminate all subcontracts to the extent they relate to the work terminated.

(4) Assign to the Government, as directed by the Contracting Officer, all right, title, and interest of the Contractor under the subcontracts terminated, in which case the Government shall have the right to settle or to pay any termination settlement proposal arising out of those terminations.

(5) With approval or ratification to the extent required by the Contracting Officer, settle all outstanding liabilities and termination settlement proposals arising from the termination of subcontracts; the approval or ratification will be final for purposes of this clause.

(6) As directed by the Contracting Officer, transfer title and deliver to the Government (i) the fabricated or unfabricated parts, work in process, completed work, supplies, and other material produced or acquired for the work terminated, and (ii) the completed or partially completed plans, drawings, information, and other property that, if the contract had been completed, would be required to be furnished to the Government.

(7) Complete performance of the work not terminated.

(8) Take any action that may be necessary, or that the Contracting Officer may direct, for the protection and preservation of the property related to this contract that is in the possession of the Contractor and in which the Government has or may acquire an interest.

(9) Use its best efforts to sell, as directed or authorized by the Contracting Officer, any property of the types referred to in subparagraph (6) of this clause; provided, however, that the Contractor (i) is not required to extend credit to any purchaser and (ii) may acquire the property under the conditions prescribed by, and at prices approved by, the Contracting Officer. The proceeds of any transfer or disposition will be applied to reduce any payments to be made by the Government under this contract, credited to the price or cost of the work, or paid in any other manner directed by the Contracting Officer.

(c) The Contractor shall submit complete termination inventory schedules no later than 120 days from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 120-day period.

(d) After expiration of the plant clearance period as defined in Subpart 45.6 of the Federal Acquisition Regulation, the Contractor may submit to the Contracting Officer a list, certified as to quantity and quality, of termination inventory not previously disposed of, excluding items authorized for disposition by the Contracting Officer. The Contractor may request the Government to remove those items or enter into an agreement for their storage. Within 15 days, the Government will accept title to those items and remove them or enter into a storage agreement. The Contracting Officer may verify the list upon removal of the items, or if stored, within 45 days from submission of the list, and shall correct the list, as necessary before final settlement.

(e) After termination, the Contractor shall submit a final termination settlement proposal to the Contracting Officer in form and with the certification prescribed by the Contracting Officer. The Contractor shall submit the proposal promptly, but no later than 1 year from the effective date of termination, unless extended in writing by the Contracting Officer upon written request of the Contractor within this 1-year period. However, if the Contracting Officer determines that the facts justify it, a termination settlement proposal may be received and acted on after 1 year or any extension. If the Contractor fails to submit the proposal within the time allowed, the Contracting Officer may determine, on the basis of information available, the amount, if any, due the Contractor because of the termination and shall pay the amount determined.

(f) Subject to paragraph (e) of this clause, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid or remaining to be paid because of the termination. The amount may include a reasonable allowance for profit on work done. However, the agreed amount, whether under this paragraph (f) or paragraph (g) of this clause, exclusive of costs shown in subparagraph (g)(3) of this clause, may not exceed the total contract price as reduced by (1) the amount of payments previously made and (2) the contract price of work not terminated. The contract shall be modified, and the Contractor paid the agreed amount. Paragraph (g) of this clause shall not limit, restrict, or affect the amount that may be agreed upon to be paid under this paragraph.

(g) If the Contractor and the Contracting Officer fail to agree on the whole amount to be paid because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined by the Contracting Officer as follows, but without duplication of any amounts agreed on under paragraph (f) of this clause:

(1) The contract price for completed supplies or services accepted by the Government (or sold or acquired under subparagraph (b)(9) of this clause) not previously paid for, adjusted for any saving of freight and other charges.

(2) The total of--

(i) The costs incurred in the performance of the work terminated, including initial costs and preparatory expense allocable thereto, but excluding any costs attributable to supplies or services paid or to be paid under subparagraph (g)(1) of this clause;

(ii) The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract if not included in subdivision (g)(2)(i) of this clause; and

(iii) A sum, as profit on subdivision (i) above, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable; however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit under this subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(3) The reasonable costs of settlement of the work terminated, including--

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection, or disposition of the termination inventory.

(h) Except for normal spoilage, and except to the extent that the Government expressly assumed the risk of loss, the Contracting Officer shall exclude from the amounts payable to the Contractor under paragraph (g) of this clause, the fair value, as determined by the Contracting Officer, of property that is destroyed, lost, stolen, or damaged so as to become undeliverable to the Government or to a buyer.

(i) The cost principles and procedures of Part 31 of the Federal Acquisition Regulation, in effect on the date of this contract, shall govern all costs claimed, agreed to, or determined under this clause.

(j) The Contractor shall have the right of appeal, under the Disputes clause, from any determination made by the Contracting Officer under paragraph (e), (g), or (l) of this clause, except that if the Contractor failed to submit the termination settlement proposal or request for equitable adjustment within the time provided in paragraph (e) or (l), respectively, and failed to request a time extension, there is no right of appeal.

(k) In arriving at the amount due the Contractor under this clause, there shall be deducted--

(1) All unliquidated advance or other payments to the Contractor under the termination portion of this contract;

(2) Any claim which the Government has against the Contractor under this contract; and

(3) The agreed price for, or the proceeds of sale of, materials, supplies, or other things acquired by the Contractor or sold under the provisions of this clause and not recovered by or credited to the Government.

(l) If the termination is partial, the Contractor may file a proposal with the Contracting Officer for an equitable adjustment of the price(s) of the continued portion of the contract. The Contracting Officer shall make any equitable adjustment agreed upon. Any proposal by the Contractor for an equitable adjustment under this clause shall be requested within 90 days from the effective date of termination unless extended in writing by the Contracting Officer.

(m) (1) The Government may, under the terms and conditions it prescribes, make partial payments and payments against costs incurred by the Contractor for the terminated portion of the contract, if the Contracting Officer believes the total of these payments will not exceed the amount to which the Contractor will be entitled.

(2) If the total payments exceed the amount finally determined to be due, the Contractor shall repay the excess to the Government upon demand, together with interest computed at the rate established by the Secretary of the Treasury under 50 U.S.C. App. 1215(b)(2). Interest shall be computed for the period from the date the excess payment is received by the Contractor to the date the excess is repaid. Interest shall not be charged on any excess payment due to a reduction in the

Contractor's termination settlement proposal because of retention or other disposition of termination inventory until 10 days after the date of the retention or disposition, or a later date determined by the Contracting Officer because of the circumstances.

(n) Unless otherwise provided in this contract or by statute, the Contractor shall maintain all records and documents relating to the terminated portion of this contract for 3 years after final settlement. This includes all books and other evidence bearing on the Contractor's costs and expenses under this contract. The Contractor shall make these records and documents available to the Government, at the Contractor's office, at all reasonable times, without any direct charge. If approved by the Contracting Officer, photographs, microphotographs, or other authentic reproductions may be maintained instead of original records and documents.

(End of Clause)

## 3.23 52.249-8 DEFAULT (FIXED-PRICE SUPPLY AND SERVICE) (APR 1984)

(a) (1) The Government may, subject to paragraphs (c) and (d) below, by written notice of default to the Contractor, terminate this contract in whole or in part if the Contractor fails to–

(i) Deliver the supplies or to perform the services within the time specified in this contract or any extension;

(ii) Make progress, so as to endanger performance of this contract (but see subparagraph (a)(2) below); or

(iii) Perform any of the other provisions of this contract (but see subparagraph (a)(2) below).

(2) The Government's right to terminate this contract under subdivisions (1)(ii) and (1)(iii) above, may be exercised if the Contractor does not cure such failure within 10 days (or more if authorized in writing by the Contracting Officer) after receipt of the notice from the Contracting Officer specifying the failure.

(b) If the Government terminates this contract in whole or in part, it may acquire, under the terms and in the manner the Contracting Officer considers appropriate, supplies or services similar to those terminated, and the Contractor will be liable to the Government for any excess costs for those supplies or services. However, the Contractor shall continue the work not terminated.

(c) Except for defaults of subcontractors at any tier, the Contractor shall not be liable for any excess costs if the failure to perform the contract arises from causes beyond the control and without the fault or negligence of the Contractor. Examples of such causes include (1) acts of God or of the public enemy, (2) acts of the Government in either its sovereign or contractual capacity, (3) fires, (4) floods, (5) epidemics, (6) quarantine restrictions, (7) strikes, (8) freight embargoes, and (9) unusually severe weather. In each instance the failure to perform must be beyond the control and without the fault or negligence of the Contractor.

(d) If the failure to perform is caused by the default of a subcontractor at any tier, and if the cause of the default is beyond the control of both the Contractor and subcontractor, and without the fault or negligence of either, the Contractor shall not be liable for any excess costs for failure to perform, unless the subcontracted supplies or services were obtainable from other sources in sufficient time for the Contractor to meet the required delivery schedule.

(e) If this contract is terminated for default, the Government may require the Contractor to transfer title and deliver to the Government, as directed by the Contracting Officer, any (1) completed supplies, and (2) partially completed supplies and materials, parts, tools, dies, jigs, fixtures, plans, drawings, information, and contract rights (collectively referred to as "manufacturing materials" in this clause) that the Contractor has specifically produced or acquired for the terminated portion of this contract. Upon direction of the Contracting Officer, the Contractor shall also protect and preserve property in its possession in which the Government has an interest.

(f) The Government shall pay contract price for completed supplies delivered and accepted. The Contractor and Contracting Officer shall agree on the amount of payment for manufacturing materials delivered and accepted and for the protection and preservation of the property. Failure to agree will be a dispute under the Disputes clause. The Government may withhold from these amounts any sum the Contracting Officer determines to be necessary to protect the Government against loss because of outstanding liens or claims of former lien holders.

(g) If, after termination, it is determined that the Contractor was not in default, or that the default was excusable, the rights and obligations of the parties shall be the same as if the termination had been issued for the convenience of the Government.

(h) The rights and remedies of the Government in this clause are in addition to any other rights and remedies provided by law or under this contract.

(End of Clause)

### 3.24 52.232-18 AVAILABILITY OF FUNDS (APR 1984)

Funds are not presently available for this contract. The Government's obligation under this contract is contingent upon the availability of appropriated funds from which payment for contract purposes can be made. No legal liability on the part of the Government for any payment may arise until funds are made available to the Contracting Officer for this contract and until the Contractor receives notice of such availability, to be confirmed in writing by the Contracting Officer.

(End of Clause)

### 3.25 VAAR 852.219-70 VETERAN-OWNED SMALL BUSINESS (DEC 1990)

The offeror represents that the firm submitting this offer [ ] is [ ] is not, a veteran-owned small business, [ ] is [ ] is not, a Vietnam era veteran-owned small business, and [ ] is [ ] is not, a disabled veteran-owned small business. A veteran-owned small business is defined as a small business, at least 51 percent of which is owned by a veteran who also controls and operates the business. Control in this context means exercising the power to make policy decisions. Operate in this context means actively involved in day-to-day management. For the purpose of this definition, eligible veterans include:

(a) A person who served in the U.S. Armed Forces and who was discharged or released under conditions other than dishonorable.

(b) Vietnam era veterans who served for a period of more than 180 days, any part of which was between August 5, 1964, and May 7, 1975, and were discharged under conditions other than dishonorable.

(c) Disabled veterans with a minimum compensable disability of 30 percent, or a veteran who was discharged for disability. Failure to execute this representation will be deemed a minor informality and the bidder or offeror shall be permitted to satisfy the requirement prior to award (see FAR 14.405).

(End of Provision)

### 3.26 VAAR 852.233-70 PROTEST CONTENT (JAN 1998)

(a) Any protest filed by an interested party shall:

(1) Include the name, address, fax number, and telephone number of the protester;

(2) Identify the solicitation and/or contract number;

(3) Include an original signed by the protester or the protester's representative, and at least one copy;

(4) Set forth a detailed statement of the legal and factual grounds of the protest, including a description of resulting prejudice to the protester, and provide copies of relevant documents;

(5) Specifically request a ruling of the individual upon whom the protest is served;

(6) State the form of relief requested; and

(7) Provide all information establishing the timeliness of the protest.

(b) Failure to comply with the above may result in dismissal of the protest without further consideration.

(End of Provision)

## 3.27 VAAR 852.233-71 ALTERNATIVE PROTEST PROCEDURE (JAN 1998)

As an alternative to filing a protest with the contracting officer, an interested party may file a protest with the Deputy Assistant Secretary for Acquisition and Materiel Management, Acquisition Administration Team, Department of Veterans Affairs, 810 Vermont Avenue, NW, Washington, DC, 20420, or, for solicitations issued by the Office of Facilities Management, the Chief Facilities Management Officer, Office of Facilities Management, 810 Vermont Avenue, NW, Washington, DC 20420. The protest will not be considered if the interested party has a protest on the same or similar issues pending with the contracting officer.

(End of Provision)

## 3.28 VAAR 852.270-1 REPRESENTATIVES OF CONTRACTING OFFICERS (APR 1984)

The contracting officer reserves the right to designate representatives to act for him/her in furnishing technical guidance and advice or generally supervise the work to be performed under this contract. Such designation will be in writing and will define the scope and limitations of the designee's authority. A copy of the designation shall be furnished the contractor.

(End of Provision)

## 3.29 VAAR 852.270-4 COMMERCIAL ADVERTISING (NOV 1984)

The bidder or offeror agrees that if a contract is awarded to him/her, as a result of this solicitation, he/she will not advertise the award of the contract in his/her commercial advertising in such a manner as to state or imply that the Department of Veterans Affairs endorses a product, project or commercial line of endeavor.

(End of Clause)

Pro-Mech USA, Inc.
122 Railroad Drive
Ivyland, PA 18974

# Invoice

RECEIVED
2002 OCT 15 AM 11: 43
FISCAL (04T)

| Date | Invoice # |
|---|---|
| 10/15/2002 | MA02-101 |

**Bill To**
FISCAL OFFICE
BOSTON HEALTHCARE SYSTEM
150 SOUTH HUNTINGTON AVENUE
BOSTON, MA 02130

**Ship To**
DEPT. OF VETRANS AFFAIRS
BOSTON HEALTHCARE SYSTEM
150 SOUTH HUNTINGTON AVENUE
BOSTON, MA 02130

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|---|---|---|---|---|---|---|
| | 1/2% 10-Net 30 | MH | 10/15/2002 | | | Jamaica Plains VA Hospital/M... |

RECEIVED 2002 NOV 12 PM 2 21 FISCAL (04T)

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| | Service Maintena... | Base Year September 15, 2002 to October 15, 2002<br>Lump Sum Price<br>Statement of Work Monthly (September, 2002) oct 15th<br>Contract Number: V523P-7085 & PO#523C-33011 | 40,740.00 | 40,740.00 |

OK to PAY
[signature]
CONTRACTING OFFICER
10/16/02

C33011

**ORIGINAL**

P.O. # C33011
"The articles or services listed hereon in the amount of $40,740 have been received or rendered and are accepted except as noted."
[signature] (Signature) (Date) (Title)

VA FSC DOES NOT PAY CERTIFIED INVOICES FOR STATION 523. TBC 10/21/02

**Total** $40,740.00

EXHIBIT 2

Pro-Mech USA, Inc.

122 Railroad Drive
Ivyland, PA 18974

RECEIVED

2002 NOV 20 AM 9:43

FISCAL (04T)

# Invoice

| Date | Invoice # |
|---|---|
| 11/15/2002 | MA02-102 |

| Bill To | Ship To |
|---|---|
| FISCAL OFFICE<br>BOSTON HEALTHCARE SYSTEM<br>150 SOUTH HUNTINGTON AVENUE<br>BOSTON, MA 02130 | DEPARTMENT OF VETRANS AFFAIRS<br>BOSTON HEALTHCARE SYSTEM<br>150 SOUTH HUNTINGTON AVENUE<br>BOSTON, MA 02130 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|---|---|---|---|---|---|---|
| | 1/2% 10-Net 30 | MH | 11/15/2002 | | | |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | Service / Maintena... | Base Year October 15, 2002 to November 15, 2002<br>Lump Sum Price<br>Statement of Work Monthly (10/15/02 - 11/15/2002)<br>Contract Number: V523P-7085 & PO#523C-33011 | 40,740.00 | 40,740.00 |

Invoice Certification for OBLIGATION/P.O. NO.: C33011

I certify that the articles or services listed hereon for PO/OBL number above have been received or rendered on 10/02 in the amount of $ 40,740.00 and are proper for payment EXCEPT as noted below:

[signature] 11/26/02
Signature Date

Engr Mgr Eng
TITLE Service

ORIGINAL

**Total** $40,740.00

EXHIBIT 3

# Invoice

Pro-Mech USA, Inc.

122 Railroad Drive
Ivyland, PA 18974

| Date | Invoice # |
|---|---|
| 12/15/2002 | MA02-103 |

| Bill To | Ship To |
|---|---|
| FISCAL OFFICE<br>BOSTON HEALTHCARE SYSTEM<br>150 SOUTH HUNTINGTON AVENUE<br>BOSTON, MA 02130 | DEPT. OF VETRANS AFFAIRS<br>BOSTON HEALTHCARE SYSTEM<br>150 SOUTH HUNTINGTON AVENUE<br>BOSTON, MA 02130 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|---|---|---|---|---|---|---|
| | 1/2% 10-Net 30 | MH | 12/15/2002 | | | Jamaica Plains VA Hospital/M... |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | Service / Maintena... | Base Year November 15, 2002 to December 15, 2002<br>Lump Sum Price<br>Statement of Work Monthly (11/15/02-12/15/02)<br>Contract Number: V523P-7085 & PO#523C-33011 | 40,740.00 | 40,740.00 |

**Total** $40,740.00

EXHIBIT 4

Pro-Mech USA, Inc.

122 Railroad Drive
Ivyland, PA 18974

# Invoice

| Date | Invoice # |
|---|---|
| 1/16/2002 | MA02-104 |

| Bill To | Ship To |
|---|---|
| FISCAL OFFICE<br>BOSTON HEALTHCARE SYSTEM<br>150 SOUTH HUNTINGTON AVENUE<br>BOSTON, MA 02130 | DEPT. OF VETRANS AFFAIRS<br>BOSTON HEALTHCARE SYSTEM<br>150 SOUTH HUNTINGTON AVENUE<br>BOSTON, MA 02130 |

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|---|---|---|---|---|---|---|
| | 1/2% 10-Net 30 | MH | 1/16/2002 | | | Jamaica Plains VA Hospital/M... |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | Service / Maintena... | Base Year December 15, 2002 to January 15, 2003<br>Lump Sum Price<br>Statement of Work Monthly (12/15/02 - 01/15/03)<br>Contract Number: V523P-7085 & PO#523C-33011 | 40,740.00 | 40,740.00 |

ORIGINAL

ORIGI...

**Total** $40,740.00

EXHIBIT
5

Pro-Mech USA, Inc.
122 Railroad Drive
Ivyland, PA 18974

# Invoice

| Date | Invoice # |
|---|---|
| 2/3/2003 | MA02-105 |

**Bill To**

FISCAL OFFICE
BOSTON HEALTHCARE SYSTEM
150 SOUTH HUNTINGTON AVENUE
BOSTON, MA 02130

**Ship To**

DEPT. OF VETRANS AFFAIRS
BOSTON HEALTHCARE SYSTEM
150 SOUTH HUNTINGTON AVENUE
BOSTON, MA 02130

| P.O. Number | Terms | Rep | Ship | Via | F.O.B. | Project |
|---|---|---|---|---|---|---|
| | 1/2% 10-Net 30 | MH | 2/3/2003 | | | Jamaica Plains VA Hospital/M... |

| Quantity | Item Code | Description | Price Each | Amount |
|---|---|---|---|---|
| 1 | Service / Maintena... | Base Year January 15, 2003 to February 15, 2003<br>Lump Sum Price<br>Statement of Work Monthly (1/15/03-2/15/03)<br>Contract Number: V523P-7085 & PO#523C-33011 | 40,740.00 | 40,740.00 |

**Total** $40,740.00

EXHIBIT
tabbies
6

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRO-MECH USA, INC. | : | |
| Plaintiff, | : | |
| vs. | : | No: 03-1673C (Judge Braden) |
| THE UNITED STATES | : | |
| Defendant. | : | |

**DECLARATION OF KATHRYN HIBBERT MCLEES**

I, Kathryn Hibbert McLees, state as follows under oath and upon personal knowledge:

1. I was employed by Pro-Mech USA, Inc. as its office administrator/director of operations until last year.

2. I called Norbert Cebula on numerous occasions between December 2002 and March 2003 asking about payment of Pro-Mech's invoices on the Jamaica Plains project, and Mr. Cebula would always respond with an evasive answer that the money was being held up, usually by some administrative paperwork issues in another office but, until the end of March, he always assured that the invoices would be paid.

3. On or about March 31, 2003, Mr. Cebula advised me for the first time that Pro-Mech's outstanding invoices would not be paid.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 10, 2004

Kathryn Hibbert McLees

EXHIBIT 7