7. Best and Final Offer

a. Pro-Mech letter dated August 26, 2002 " Pro-Mech is able to achieve this price reduction without reducing our commitment of manpower, tools, and **QUALITY MATERIALS** required to perform this contract. Make no mistake, VAMC will not entertain an increase in contract price.

**POST WARD**

1. Phase in Period

a. This contract commenced on September 15, 2002 to give Pro-Mech an opportunity to familiarize the contractor with the contract requirements. During that time frame, it was an opportunity to order materials and supplies and to transport equipment and tools. More importantly, it was an opportunity to gain valuable information from the incumbent contractor, Limbach Mechanical Contractors, who remained on site until September 30, 2002. For 15 days only one licensed journeyman and one apprentice took advantage of this opportunity. Pro-Mech PM Sheets show that there are approximately 50 pieces of equipment that Pro-Mech can not find. Furthermore, there are 3 roofs, each containing large pieces of equipment, which Pro-Mech can not find

2. Contract Requirements

a. When the incumbent Contractor left on September 30, 2002 it was Pro-Mech responsibility to fully man the contract. On October 1, October 2, and October 3, and for the holiday week end, only one apprentice was present. This was grounds for an immediate Termination for Default. Conversation and correspondence gave the impression that one journeyman was sick and the plan to have a replacement could not be accomplished. In conversation with Pro- Mech employees and other sources confirmed that the above excuses were lies.

b. Paragraph #1 of the Contract states "furnish all labor, **MATERIALS,** equipment and supervision required for the professional maintenance of building environmental systems listed in the attached Inventory of Equipment. It was the responsibility of Pro-Mech to determine the status of each piece of equipment on the Inventory of Equipment. It was never Pro-Mech responsibility to upgrade the systems above the performance that existed at the contract commencement date. It was discussed at the pre bid meeting that some of this equipment could be approximately 50 years old the Government did not expect the Pro-Mech to upgrade the system beyond the condition it was turned over to Pro-Mech. What the VAMC did expect is that the systems would be maintained to keep them running.

No were does this imply that Pro-Mech is responsible for only the equipment that it had done preventive maintenance on. Pro-Mech assumed responsibility for all the equipment

shown on the Inventory of Equipment the date the contract was signed. It makes sense that only a small portion of the Inventory of Equipment is PM everyday. Given that scenario, it would take months for Pro-Mech to assume responsibility for the entire list.

c. Paragraph #7 of the Contract states "If items are discovered during testing, inspection, and maintenance phases of this project, the Contractor shall **REPAIR OR REMOVE AND REPLACE WORN OR DOUBTFUL COMPONENTS AND/OR PARTS. THE CONTRACTOR, SHALL PROVIDE COMPONENTS, PARTS AND SUPPLIES REQUIRED TO KEEP THE EQUIPMENT OPERATING PROPERLY AND EFFICIENTLY AT NO ADDITIONAL COST TO THE GOVERNMENT"**

d. Paragraph #8 of the Contract reads "In the event that components or repairs fail because of lack of knowledge or improper workmanship, the **CONTRACTOR SHALL MAKE WHATEVER REPAIRS** are necessary in order to bring the equipment to the proper operating state at no cost to the Government. Any damages will be borne by the Contractor.

e. Paragraph #15 of the Contract reads " Subsequent to award of this contract, Pro-Mech shall provide to the VAMC unit price for each item listed in the Inventory of Equipment. The prices of each individual item shall equal the annual contract amount." To date, VAMC has not received these unit prices.

f. Paragraph #18 of the Contract reads "The Contractor shall allow for unscheduled work resulting from "abnormal conditions". The Contractor shall include 200 man hours in the annual price. The hourly rate for "Emergency Services" included in the "Supplies or Services and Prices/Cost is $52.00 per hour not the $75.00 shown on Additional Work Authorization submitted to VAMC.

g. Paragraph C of the contract under the title of "Selection Criteria" states that " The Contractor shall have engaged in the task of providing HVAC maintenance activities as a major part of their normal business for a period of at least five years. The key word here is CONTRACTOR. According to Pennsylvania Department of State, Pro-Mech USA, Inc. filed for incorporation on May 17, 2002.

h. Refrigerant Management Program

VAMC has not received a copy of Pro-Mech USA Refrigerant Management Program, nor copies of licenses held by Pro-Mech employees who have had this training.

i. Pro-Mech USA has not provided an Equipment Maintenance Schedule as was part of the technical proposal.

j. Several detailed Monthly PM's show several pieces of equipment as being 100% complete. This equipment was not 100% maintained since parts ordered to perform this function arrived after the sheets were turned in.

**OTHER**

a. Letter dated September 25, 2002 Pro-Mech USA stated that it had lost those employees due to pressure from an Union Official. VAMC understands that Union Officials can be threatening. To say that this short conversation was enough to scare off two experienced workers from leaving an employer who had five years of work under contract is suspicious. The only area of concern was that the Union Official was trespassing on federal property. This situation was reported by Dan Willis to the VAMC Police as soon as he became aware of it. Dan Willis and Larry Cummings met with the VAMC Police and the VAMC Police informed the Union Official not to engage in this activity on VAMC property

b. There will no response to the **unsigned** letter of December 5, 2002 written by the Law Offices of Robert P. Meingossner.

**RE - PROCUREMENT**

Based on the fact that the HVAC system is a very critical part of the VAMC operations, the following services were, or will be, re-procured and costs will be charged to Pro-Mech account

a. 10/10/2002 - Chiller Bldg.

Condenser water blow down solenoid 400 Ton Trane Tower

b. 10/27/2002 - Bldg #1- 12B Mechanical Room

Return airflow missing wiring from control coils

c. 10/29/2002 - Bldg. #2 - Basement (Invoiced as Extra Work)

Traced and repaired pneumatic leaks in lines

d. 11/12/2002 - Bldg. #1 - 3rd floor (Invoiced as Extra Work)

Installed control valve body and traced out control wiring

e. 11/22/2002 - Bldg.# 7 (Invoiced as Extra Work)

Revised control circuit to operate both compressors at the same time when tank pressure drops

f. 12/11/02

Hot water valve/actuator needs to be replaced Doctors lounge ACA building. Pro-Mech has this part and refuses to replace it unless they are paid to do so .This item is covered in the HVAC contract.

g. 12/13/2002- Bldg#9 (Done by Others)

VFD for Pump #2. Pro-Mech denies this is covered equipment and will not repair it under the terms of the contract.

h. 1/29/2003 - Bldg# 2- Linear Accelerator (Done by Others)

Chiller which provides cooling for Linear Accelerator. Nearly sent patients home and cancel treatment Replace low water temperature control.

i. 1/30/2003 Bldg #4 (Invoiced as Extra)

Modular master heat pump blower motor and capacitor replaced. Building# 9 replaced 5 thermostats on fan coil units

j. 2/4/2003 - Bldg #1, 4th Floor (Done by Others)

Replaced fan motor, contactor, overload, pulley and sheeves and auxiliary contactor due to fire caused by excessive grease at the vent slots of he end bell and this grease was very dusty and excessive run time

k. Latest Pro-Mech PM sheets show that approximately 15 units need thermostats. These will be Done By Others.

## SUMMARY

a. In summary, as stated above Pro-Mech has not met contractual requirement for the past six months. This unquestionably shows that VAMC has given Pro-Mech ample amount of time to correct any violations. The fact that Pro Mech has been waiting for a "list of violations" shows that Pro-Mech does not understand the contract requirements. All statements made above are direct quotes taken from the contract. One, two, or three of the above items would not be considered significant. However, the total number of items that are stated above which do not conform to the contract is significant. As you will note, parts of this letter are written in **capitalized bold print** to point out the contract requirements include supplying parts, making repairs and responding to service calls. This should resolve the argument that this contract is only for preventive maintenance of the HVAC equipment as was stated in Pro Mech letter of July 11, 2002.

b. Based on the above and in accordance with FAR Part 46 ( Government Acceptance of Services) specifically paragraph 46.407 "Non Conforming Supplies or Services" VAMC is withholding payment of all monies for not adhering to the contract specifications. Withholding of payments does not represent the VAMC attempt to cause unnecessary financial burden to Pro-Mech. If contract requirements were met, then VAMC has a legal obligation to pay for services rendered. However, when contract requirements have not been met, and sufficient time has been given to correct these deficiencies, VAMC has a legal obligation not to pay for these services.

c. As In accordance with FAR Part 49-4 it is the VAMC right to Terminate the Contract for Default based on ProMech actual and anticipated failure to perform its contractual obligations. Within 10 calendar days after receipt, Pro Mech must show cause why the contract should not be Terminated for Default. The failure of Pro Mech to present an explanation will be taken as an admission that no valid explanation exits.

Signed

Norbert J. Cebula
Contracting Officer

Fettmann, Tolchin & Majors PC

ATTORNEYS & COUNSELORS-AT-LAW

MAILING ADDRESS
10509 Judicial Drive, Suite 300
Fairfax, VA 22030-7501
t: 703.385.9500
f: 703.385.9893

CORRESPONDENT OFFICE
New York City
t: 877.385.3864

March 3, 2003

**VIA FACSIMILE TO 617-264-6521 & U.S. MAIL**
Mr. Norbert J. Cebula
Contracting Officer
Department of Veteran Affairs
VA Boston Healthcare System
Acquisitions & Material Management (90C)
150 South Huntington Avenue
Boston, MA 02130

Re: Show Cause Notice, Contract No. V523P-7085

Dear Mr. Cebula:

We are counsel to Pro-Mech USA, Inc. and are writing in response to your February 19, 2003, Show Cause Notice. Pro-Mech disputes each and every contention in that Notice, both factually and legally. If forced to, the company will not only defend itself vigorously against your claims, it will submit and prosecute its own claims against VAMC for money owed under the referenced contract and for damages caused by VAMC's breaches of that agreement, including its failure to pay for services rendered for the past 3 months.

Before we begin this litigation, however, Pro-Mech wants to attempt one last time to resolve this matter amicably and quickly. If a resolution cannot be reached now, both sides will begin what likely will be a long and unproductive litigation process. To avoid these consequences, Pro-Mech proposes that the parties meet as soon as possible to discuss and, hopefully, resolve the matters separating them. Pro-Mech is prepared to meet this week or next, at any mutually convenient place and time. At that meeting, all issues can be addressed, and hopefully, a way can be found to avoid the inevitable quagmire of litigation toward which the parties are now heading. Because of your issuance of the Show Cause Notice, however, we will address the substance of your contentions now, and are prepared to further discuss them at the proposed meeting.

In response to the Notice, we first need to establish the terms of the contract. Your



EXHIBIT
10

position notwithstanding, FAR 52.212-2 does not state that all correspondence becomes part of a contract. This FAR provision does not address this matter at all. The terms of the contract are those stated in the contract, and that does not include cover letters and the like under any set of circumstances even remotely applicable here.

Even assuming that you are correct legally as to the terms of the contract, which you are not, you are factually incorrect. In this regard, we will address your letter item by item, using the same numbering system you employed.

**Pre-Award**

1. July 26, 2003 Letter

a. The sentence you quote ("Pro-Mech can not only save . . . ") neither requires nor addresses "recommendations." Pro-Mech has saved VAMC money because its charges are less than others, and its services are better, though VAMC's interference in the contract has blinded VAMC to the quality of the services. Just one example will suffice to make this point. Pro-Mech immediately changed out VAMC's dirty air filters in all its air handlers, something which the prior contractor apparently had not been doing. This act alone saved VAMC substantial power costs.

b. The mechanical rooms were cleaned immediately, and until VAMC stopped paying Pro-Mech, were re-cleaned periodically. We have reviewed all documentation and can find no notice from VAMC prior to the February 19 Show Cause Notice indicating any problem with mechanical room cleanliness.

c. Pro-Mech has been providing insulation as it goes through the building. This work cannot be completed immediately, as the problem is long standing and endemic. Once again, we note that we have reviewed all documentation and can find no notice from VAMC prior to the February 19 Show Cause Notice indicating any problem with this issue.

d. The only belt guards left off of compressors were removed by VAMC personnel. Pro-Mech has corrected each matter as soon as it has been found. Once again, we note that we can find no notice from VAMC prior to the February 19 Show Cause Notice indicating any problem with this issue.

e. Pro-Mech has responded to all service calls or work order requests despite the fact that VAMC stopped paying Pro-Mech causing the company to lose personnel and forcing it to mitigate damages by avoiding expenditures that would cause the company additional financial injury. If you can identify the specific "80 work orders" to which you are referring, we can address them specifically. Without these specifics, your Show Cause Notice is clearly insufficient as it precludes a specific response.

2. Management Plan/Contract Management

a. VAMC approved all personnel whom Pro-Mech assigned to the site. We have no record of spare parts which VAMC claims to have provided to Pro-Mech. If you have such records, we would be pleased to either purchase these parts from VAMC or return them.

b. There is no requirement that Pro-Mech provide to VAMC its personnel's personal contact information. You have been provided contact lists and contact telephone numbers. Nothing more is required.

c. Pro-Mech has responded to trouble calls in support of VAMC's maintenance staff. We have searched the record and can find no documentation of complaints regarding non-responses for Buildings #1 and #9. We do note that Pro-Mech has discussed with VAMC the piping designs in Building #9 which is not industry standard and may account for many of the problems in that building. With respect to Building 1A, the problem which caused the "safety" problem, a problem which actually never occurred but was a potential problem which was avoided due to Pro-Mech's actions, was caused by a piece of equipment which was inoperable at the time Pro-Mech took over the contract and on which Pro-Mech had not yet worked at the time the problem arose.

d. There is no requirement that Pro-Mech submit any plans to VAMC for its approval.

e. While Pro-Mech would prefer using its own program, VAMC directed Pro-Mech to use VAMC's program. It is either one or the other; Pro-Mech cannot use both.

3. Safety and Environmental Data

a. There is no requirement that Pro-Mech submit any plans to VAMC for its approval. Nevertheless, Pro-Mech provided a copy of this plan twice to VAMC, the second time in December 2002 when it hand delivered a copy of the safety plan to you personally. Please advise if you wish Pro-Mech to deliver a third copy of this document.

4. Technical Capabilities

a. During the period October 1 - October 8, 2002, Larry Cummings was ill and missed three days, not a week, of work, as you yourself note in the paragraph of your letter entitled "Contract Requirements." Mr. Cummings died in November. This was the beginning of the contract, and the problem did not recur. Pro-Mech has heard no complaints about coverage since Mr. Cummings illness. Mr. Smith was licensed, but allowed his license to lapse. It is being reinstated. We note that no one has ever challenged Mr. Smith's competence.

5. Contractor Responsibility

a. We have no record of material and tools provided by VAMC. Certainly, Pro-Mech has never requested such material or tools. It is true that Pro-Mech employees must now request

home office approval to order parts, and that is because of VAMC's breach of contract in failing to pay invoices submitted by Pro-Mech.

b. Until Larry Cummings' untimely death, Pro-Mech used his home in Dedham as a local office. After his death, Pro-Mech uses Mr. Smith's home in Weymouth. Pro-Mech did not plan Mr. Cummings' death when it submitted its proposal.

6. Organizational Support

a. Mr. Cummings died, and, as you know, several Pro-Mech employees were frightened by a union organizer which VAMC failed to keep off its site. There is no requirement that Pro-Mech tie employees to jobs and can replace them as necessary, which it has done.

7. Best and Final Offer

a. We have no idea about what VAMC is complaining with respect to this matter. If you wish to clarify your statement, we will respond.

**Post Award**

1. Phase in Period

a. We do not have any information concerning your allegations that Pro-Mech cannot find equipment or roofs. If you provide us some details, we would be pleased to respond.

2. Contract Requirements

a. The issue with the sick employment and replacement plan is well documented in email correspondence between Messrs. Hoffman, Willis, and Cebula. We have no idea about any lies. Mr. Cummings was sick in October, and dead in November. Do you mean to suggest that is a lie? We would be pleased to comment if you wish to provide us details upon which we can comment.

b. We have no idea about what VAMC is complaining with respect to this matter. If you wish to clarify your statement, we will respond.

c. We have no idea about what VAMC is complaining with respect to this matter. If you wish to clarify your statement, we will respond.

d. We have no idea about what VAMC is complaining with respect to this matter. If you wish to clarify your statement, we will respond.

e. Pro-Mech will provide these unit prices to you.