**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRO-MECH USA, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 03-1673C |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S OPPOSITION TO**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT**

Pursuant to Rule 56 of the Rules of the Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this opposition to plaintiff's motion for summary judgment. Defendant requests that this Court deny plaintiff's motion for summary judgment. In support of our opposition, we rely upon the pleading, Defendant's Statement of Genuine Issues and the following brief with appendix.

## QUESTIONS PRESENTED

1. Whether plaintiff Pro-Mech fulfilled its contractual obligations to maintain the HVAC system at the Jamaica Plain campus of the Department of Veterans Affairs ("VA") from November 15, 2002 through April 1, 2003?

2. Whether plaintiff Pro-Mech forfeited its right to be paid for the 4 ½ months from November 15, 2002 through April 1, 2003, by repudiating the contract in April 2003?

## STATEMENT OF THE CASE

### I. Nature Of The Case

This matter is a contract dispute between plaintiff Pro-Mech and the Department of Veteran Affairs ("VA"). Pro-Mech claims that it is entitled to payment for the contract period

from November 15, 2002 through April 1, 2003. The VA maintains that Pro-Mech was not performing on the contract during the period in question and that Pro-Mech forfeited its right to payment by abandoning the project after March 2003 during its dispute with the VA.

II. Procedural History

Pro-Mech filed this action on July 10, 2003. The parties have conducted discovery. Pursuant to this Court's August 2, 2004 Order, Pro-Mech filed for summary judgment in which it identified the following questions: 1) Did the Government materially breach its contract with Pro-Mech by failing to pay invoices when due?; 2) Was Pro-Mech justified in abandoning work when the Government failed to pay invoices when due?; and 3) Is the Government liable for the invoices Pro-Mech submitted? As shown below, this Court should deny Pro-Mech's motion for summary judgment because there is a genuine factual dispute between the parties on these and other material issues.

III. Statement Of Facts

In July 2002, Pro-Mech USA, Inc. contracted with the VA to inspect, test, maintain the HVAC system at the VAMC building in Boston, Massachusetts. Plaintiff's Proposed Findings of Uncontroverted Facts ("PPFUF") ¶ 1. The contract had a base year with an option for four more years. Pl.'s Exhibit 1, pgs. 6-7 of 47. VA agreed to pay Pro Mech $488,880 during the base year. Id. The contract began in September 2002. PPFUF ¶ 10.

VA paid several $40,740 invoices that Pro-Mech submitted prior to December 2002. PPFUF ¶¶ 10-11. VA employees began disagreeing with Pro-Mech about the scope of the contract and about performance that VA regarded as unacceptable. Defendant's Statement of Genuine Issues ("DSGI") ¶ 19; Exhibit 8. Beginning in December 2002, the contracting officer,

Norbert Cebula, ceased paying Pro-Mech invoices. PPFUF ¶ 12. On February 19, 2003, Mr. Cebula issued Pro-Mech a "Show Cause Notice" listing asserted deficiencies in Pro-Mech's performance. DSGI ¶ 19. On March 2, 2003, Pro-Mech responded with a letter that disputed Mr. Cebula's complaints. Id. ¶ 20. As this dispute proceeded, Pro-Mech submitted four invoices for $40,740, each of which remain unpaid. PPFUF ¶¶ 12, 13, 14, 21.

On March 21, 2003, Pro-Mech submitted a certified claim to Mr. Cebula demanding payment for invoices that had not been paid. DSGI ¶ 22. Following telephonic conversations in which Mr. Cebula refused to pay Pro-Mech, Pro-Mech notified Mr. Cebula by letter dated April 1, 2003, that Pro-Mech was no longer obligated to perform services and, instead, would "cancel the agreement" as of that date. Id. ¶¶ 23-25.

Pro-Mech filed its complaint in the Court of Federal Claims on July 10, 2003. In its single, unlabelled count, Pro-Mech alleges that the VA "refused to comply with its obligation to pay Pro-Mech for work performed under the Contract" and it seeks an award of $162,960, "plus an additional $22,221.72 for the 12 days from March 15 to April 1, 2003," plus interest, costs, and attorney fees.

## SUMMARY OF THE ARGUMENT

The VA was only obligated to pay for work that it accepted. Pro-Mech and the VA had disputes about the requirements of the contract and whether Pro-Mech was performing the contract. VA employees repeatedly discussed these problems with Pro-Mech representatives. VA refused to pay submitted invoices and discussed its disagreements with Pro-Mech because it did not accept Pro-Mech's work as service conforming to the contract. Ten days after making a demand for payment, Pro-Mech "walked off the job," to use its own phrase. The question

whether Pro-Mech was performing the contract and entitled to payment or whether the VA was trying to work with Pro-Mech to resolve disputes when Pro-Mech repudiated the contract are factual questions that are not ripe for resolution at this point under summary judgment.

## ARGUMENT

## The Court Should Deny Pro-Mech's Motion For Partial Summary Judgment

### A. Summary Judgment Is Not Appropriate When Material Facts Are Disputed

Summary judgment is only appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. RCFC 56(c); Forman v. United States, 329 F.3d 837, 841 (Fed. Cir. 2003) (citing Anderson v. Liberty Lobby, 477 U.S. 242, 247-48 (1986)). "The focus in determining whether summary judgment is appropriate is the lack of disputed material facts. A material fact has been defined as a fact that will make a difference in the outcome of a case." Curtis v. United States, 144 Ct. Cl. 194, 199, 168 F. Supp. 213, 216 (1958), cert. denied 361 U.S. 843 (1959). Stated differently, disputes over facts that would affect the outcome of a claim or defense will properly prevent summary judgment. See Anderson, 477 U.S. at 248.

### B. Material Facts Regarding Pro-Mech's Performance Are Disputed

#### 1. The Parties Dispute Whether Pro-Mech Was Entitled To Payment Of The Invoices It Submitted

According to Pro-Mech, the key issue in this case concerns whether Pro-Mech was entitled to payment of the invoices it submitted. In this regard, Pro-Mech asserts that "a contractor has a right to have its invoices paid . . . [t]his right is absolute . . . ." Pl.'s Br. at 7. Here, however, the provisions of the contract between Pro-Mech and VA declared that work had

to be conforming and that invoices had to be paid only if work was accepted. Defendant's Statement of Genuine Issues ("DSGI") ¶¶ 4, 6, 7. Nevertheless, in support of its assertion that it had a right to have its invoices paid regardless of disputes between the parties and the inadequacies the VA perceived in its performance, it cites Pigeon v. United States, 27 Ct. Cl. 167 (1892). Unlike this case, Pigeon involved a contractor who was performing the work when the Government withheld payments because of concerns that future completion of a dredging project would be delayed. Thus, assuming for argument's sake that Pro-Mech did not repudiate its contract (and thereby forfeit its right to payment), whether Pro-Mech was entitled to payment will turn upon the adequacy of its performance, and whether it complied with all contract requirements.

Genuine issues of material fact exist with respect to these issues, however. VA employees have testified about serious deficiencies that made Pro-Mech's service non-conforming from the VA's perspective. DSGI ¶ 19. Moreover, some of those same employees have testified that they had long communicated to Pro-Mech that its performance was unacceptable and that Pro-Mech refused to perform what the VA considered to be required work. DSGI ¶¶ 4, 7, 8, 9, 16, 17, 18, 19, 23, 24, 28. In fact, Pro-Mech early on felt the need to seek legal advice to butress its position about what the contract required. DSGI Exhibit 8.

Despite these facts, Pro-Mech has cited another case in which the Government accepted a piece of equipment, and used said equipment, to argue that the VA could not reject Pro-Mech's services other than through default. Pl.'s Br. at 10 (citing John C. Kohler Co. v. United States, 204 Ct. Cl. 777, 498 F.2d 1360 (1974)). However, unlike that case, the Government withheld payment for services it felt were non-conforming and VA employees have testified that they

discussed performance deficiencies with Pro-Mech. It is hard to imagine what more a party can do to show non-acceptance of proffered services while continuing to try to work with a contractor other than deny payment and communicate complaints to that contractor.[1] Since Pro-Mech's entitlement to payment in such circumstances can only be determined by considering the nature of the VA's communications to Pro-Mech and the adequacy of the Pro-Mech's work and because such matters of stark factual dispute, this case is not amenable for summary judgment.

2. There Is A Genuine Dispute Whether Pro-Mech Repudiated The Contract

Pro-Mech, in its own words, "walked off the job" on April 1, 2003. Plaintiff's Proposed Findings of Uncontroverted Facts ¶ 25. It did this 10 days after making a formal claim for the amount in dispute. Id. at ¶ 22. The Contract contained a specific provision requiring that "the Contractor shall proceed diligently with performance of this contract, pending final resolution of any dispute arising under the contract." DSGI ¶ 6. Because Pro-Mech's failure to perform according to the contract justified withholding payments, Pro-Mech's refusal to continue to perform pending resolution of its contract disputes constituted a repudiation. See, e.g., PCL Constr. Servs., Inc. v. United States, 47 Fed. Cl. 745, 809 (2000) (citing United States v. Dekonty Corp., 922 F.2d 826, 828 (Fed. Cir. 1991)).

However, Pro-Mech alleges that it was performing the contract and that the Government materially breached the contract by not paying invoices. The question of material breach can

[1]Though Pro-Mech implies that the Government may not "fail to exercise" its inspection and acceptance rights, it neglects to mention that FAR §§ 12.208 and 12.402, both of which relate to commercial items, respectively state that such contracts "rely on contractors' existing quality assurance systems as a substitute for Government inspection and testing" (§ 12.208) and that there is an "assumption that the Government will rely on the contractor's assurances that the commercial item tendered for acceptance conforms" and that "the Government always has the right to refuse acceptance of nonconforming items."

only be resolved by considering the adequacy of Pro-Mech's performance and the handling of the dispute between the parties. See Morganti Nat'l., Inc. v. United States, 49 Fed. Cl. 110, 141 (2001). Whether Pro-Mech's decision to abandon performance was a repudiation of its contractual obligations is a question of fact that cannot be resolved on plaintiff's motion for summary judgment.

## CONCLUSION

For the foregoing reasons and because of the material factual issues listed in Defendants Statement of Genuine Issues, we respectfully request the Court to deny plaintiff's motion for summary judgment.

Respectfully Submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Brian M. Simkin
BRIAN M. SIMKIN
Assistant Director

s/ James D. Colt
JAMES D. COLT
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
(202) 514-7300
(202) 307-0972 (fax)

October 19, 2004

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of October, 2004, a copy of the foregoing DEFENDANT'S OPPOSITION TO PLAINTIFFS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT was filed electronically. I understand that notice of this filing will be sent to all parties of record by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ James D. Colt