# Defendant's Exhibit 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| PRO-MECH USA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | No. 03-1673C |
| | ) | |
| v. | ) | (Judge Braden) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF NORBERT J. CEBULA**

I, Norbert J. Cebula, pursuant to 28 U.S.C. § 1746, declare as follows:

1. I was the contracting office assigned to the HVAC maintenance Contract No. V523P-7085 ("Contract") between the Department of Veterans Affairs ("VA") and Pro-Mech.

2. During the ongoing dispute with Pro-Mech in 2002 and 2003 involving the Scope of the Contract and what the VA believed to be Pro-Mech's unacceptable performance of the contract, I had several contacts with various Pro-Mech representatives, including Kathryn Hibbert and Martin Hannon.

3. At no time did I indicate that Pro-Mech deserved payment for the period in dispute or promise such payment.

4. In all my contacts with Pro-Mech representatives, I sought to resolve our differences and to to assist them in rendering an acceptable performance.

**I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.**

Date: 10/15/2004

Norbert J. Cebula

# Defendant's Exhibit 5

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

COPY

- - - - - - - - - - x
PRO-MECH USA, INC., :
Plaintiff, :
-vs- : No. 03-1673C
(Judge Braden)
THE UNITED STATES, :
Defendant. :
- - - - - - - - - - x

Washington, D.C.

Thursday, August 19, 2004

Deposition of

ROBERT J. CEBULA

a witness, called for examination by counsel on behalf of the Plaintiff, pursuant to notice, in the offices of The United States Department of Justice, Civil Division, 1100 L Street, Northwest, Washington, D.C., beginning at 10:06 a.m., before Daryl F. Garrett, a Verbatim Reporter and a Notary Public in and for the District of Columbia at Large, when there were present on behalf of the respective parties:

Whereupon,

ROBERT J. CEBULA

a witness, was called for examination by counsel on behalf of the Plaintiff, and, after having been duly sworn by the Notary Public, was examined and testified, as follows:

EXAMINATION ON BEHALF OF PLAINTIFF

BY MR. TOLCHIN:

Q Will you please state your full name?

A Robert John Cebula, that's C-e-b-u-l-a.

Q Mr. Cebula, what's your address, first work and then home?

A Okay. Work is Jamaica Plains, Boston Health Care System, Huntington Ave., Boston, New York or Boston, Massachusetts, 02130. My home is at 169 Nantasket, that's N-a-n-t-a-s-k-e-t, Apartment Number 9, and that is in Hull, H-u-l-l, Massachusetts, 02045.

Q Where are you employed?

A The VA Medical Center, Boston Health Care System.

Q What's your position there?

A I'm a contracting officer.

Q How long have you held that position?

A Three years.

journeyman; isn't that correct?
A That's correct.
Q In January, during a period of time, certainly by January, Phil Smith was working full time there; isn't that correct?
A That's correct.
Q He was what you call an un-licensed journeyman; isn't that correct?
A That's correct.
Q Because he had a license and he let it lapse; isn't that correct?
A That's correct.
Q Now, did you ever send a notice to Pro-Mech saying that having Mr. Smith there was unacceptable and that they had to replace him with somebody who had a license or any other notice, any e-mail, any --
A A written notice?
Q Any e-mail written notice, oral notice, anything to Pro-Mech saying that having Mr. Smith there was unacceptable because he didn't have a license.
A I'm sure we had verbal correspondence of that.
Q But nothing in writing; isn't that correct?
A Nothing in writing.

licensed HVAC mechanic at the beginning of the contract.

That was in the solicitation documents. It was in the pre-bid meetings. It was in the post-award meetings. It was in the subsequent meetings, subsequent discussions that we wanted a licensed HVAC mechanic.

At that time, it may have not been Phil Smith. It may have been anybody that was there.

Q What other objections did you have to Pro-Mech's work between November or December that caused you to refuse to pay their bill?

A That they did not catch up to work they haven't completed before.

Q What work were they supposed to complete before that they didn't catch up with?

A Those items shown on a task order list.

Q What task order list?

A You don't have one here?

Q You have in front of you the documents you provided to us.

A There should have been a task order list which we generate, a generation of what we need to be looked at that particular month. It lists all of the equipment.

MR. COLT: May I ask him if --

MR. TOLCHIN: You can show him anything. He has all the documents.

MR. COLT: May I ask if this is --

THE WITNESS: Oh, that is --

MR. COLT: -- what you are referring to (indicating)?

THE WITNESS: I'm sorry. I'm sorry. That's exactly what it is.

MR. COLT: I'm sorry. Just to clarify, Mr. Cebula is referring to the document production, Bates numbers 187 through 210.

THE WITNESS: Yes, I am.

MR. COLT: Is that what you were referring to?

THE WITNESS: I am referring to that.

BY MR. TOLCHIN:

Q Now, page 187 wasn't prepared until April of 2003; isn't that correct? So you couldn't have given that list to them in December?

A No. We wouldn't give this to them in December, but we did give them everything prior to that.

Q Everything prior to what?

A Prior to -- these work order -- task order lists are prepared on a monthly basis from day one of the

contract.

Q Where are the documents that you say that you provided to Pro-Mech in December of 2003 directing them to do work, which they didn't do, which caused you not to pay?

A These were given to Pro-Mech before that. They were given to Pro-Mech every month.

Q Where are those documents?

A These are them. These are them.

Q But they're under a memo dated in April of 2003.

A Which just showed the task orders that were not completed. They could not locate certain equipment. They did not complete tasks on certain equipment and these were the items that they did not provide.

Q So on page 187, when it tells me that something was deferred, what does that mean?

A Deferred to next month, couldn't get to it this month.

Q Why would something be deferred?

A Couldn't find it, didn't have the parts for it.

Q So they perhaps were working on it and they

just didn't get it done; is that correct?

A That's correct, yeah.

Q Is there any provision in the contract that allows you to stop paying somebody because they couldn't get parts or they couldn't find a piece of equipment?

A Yes.

Q What provision of the contract allows you to do that?

A The provision that says that we will only pay for work that is completed.

Q Did you ever pay for any work that was completed in December?

A I don't believe so. If it was not on the invoice, we did not pay. If it was not invoiced, we did not pay other invoices, other --

Q Mr. Cebula, you just decided to stop paying and not tell Mr. Hannon why; isn't that correct? That was the decision you made.

A It's not that I told him why. If he didn't know why, he wasn't doing his job.

Q So you stopped paying and you decided not to tell him why because you figured he had to figure it out himself; isn't that right?

A He's the manager of Pro-Mech, the president of Pro-Mech.

Q Answer the question yes or no, Mr. Cebula.

A Yes.

Q You never defaulted Pro-Mech, did you?

A Pro-Mech left on their own accord.

Q Pro-Mech left because you refused to pay them; isn't that correct, and refused to tell them why?

MR. COLT: Objection. I don't know if Mr. Cebula can say why Pro-Mech left.

MR. TOLCHIN: Fair. I'll withdraw the question.

BY MR. TOLCHIN:

Q So just to be clear, you permitted Pro-Mech to have people on the job in December, from November 15, through December 15, from December 15, through January 15, January to February, February to March and all the way to April 1? You permitted Pro-Mech to have people on the job there; isn't that correct? You didn't kick them off the job?

A No.

Q So you permitted them to have people there on the job?

A We let them have people there on the job, yes.
Q So you allowed them to proceed with the contract; isn't that correct?
A Yes.
Q During that period of time you accepted whatever work that they did?
A Not fully accepted, as you will see on the April 4, out of the 1,117 orders that we gave them, 641 were completed, which is half, 50 percent.
Q You never sent a notice of rejection, did you? November to December, December to January, January to February, February to March, all the way to April 1, you never sent a notice of rejection, did you?
A Again, Pro-Mech -- I did not --
Q Just answer the question, Mr. Cebula.
A No, no.
Q You never sent a notice of rejection?
A I don't believe I have.
Q Whether there's a dispute as to whether they did this work or didn't do the work, whatever work that they did do, you received the benefit of that work; isn't that true?
A That's correct.