IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| PRO-MECH USA, INC. | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | No: 03-1673C |
| | : | (Judge Braden) |
| THE UNITED STATES | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF PRO-MECH USA'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANT**

The Government's opposition to plaintiff Pro-Mech USA's motion for summary judgment is wanting in two critical respects. First, it misstates the law, completely ignoring controlling legal authority, and representing cases as standing for propositions which they clearly reject. Second, it attempts to create disputes about issues of fact, when the disputes it claims are neither genuine, nor material, nor even about facts in some instances.

Plainly, as we show below, the Court should enter summary judgment in this case in favor of Pro-Mech and against the Government, awarding Pro-Mech $185,181.72, which is the precise amount of its outstanding invoices for the period prior to the date Pro-Mech walked off the contract on April 1, 2003.

## Argument

### A. The Government Misstates the Law in Arguing that there is a "Dispute Whether Pro-Mech was Entitled to Payment of the Invoices It Submitted"

The Government's first argument opposing summary judgment is dressed in the guise of a contention about a "dispute" – an obvious catch word in defending against a motion for summary judgment. But, the Government really is arguing about a *legal* dispute, not a factual

dispute. A legal dispute does not impact summary judgement; it simply requires the Court to decide which party is presenting the correct statement of law.

Here, Pro-Mech set forth in its Memorandum in Support of Motion for Summary Judgment against Defendant (filed September 10, 2004) the applicable law: in the absence of an actual set off (which is neither pleaded by the Government nor otherwise applicable) the Government may not refuse to pay invoices during a dispute with a contractor unless a contract clause, such as a default clause, permits the payment refusal (which, again, is not the case here). The Government cites no contrary law, but rather attempts to distinguish two of the numerous cases, including binding precedent, which Pro-Mech cited to the Court in its Memorandum in Support of Motion for Summary Judgment.

According to the Government, one of the cases Pro-Mech cited, *Pigeon v. United States*, 27 Ct. Cl. 167 (1892), addresses only those situations in which the Government had no "concerns" about current work, but only had "concerns about <u>future</u> completion" of the work. *See* Government Brief at p. 5 (emphasis in original). In *Pigeon v. United States*, *supra,* however, a contracting officer withheld progress payments on a dredging contract because he "became dissatisfied with the progress of the work" *Id*., 27 Ct. Cl. at 172, and refused to pay the contractor "upon the ground that the work was not progressing as it should." *Id*., 27 Ct. Cl. at 173. Then, when the contractor sued, the Government argued that it could justly not pay the contractor's invoices because the contractor "violated his agreement, and that the failure upon the part of the [contractor] to perform his contract in damages is much more than any amount which the plaintiff can legally claim for labor performed by him under the contract." *Id.* As this makes clear, the *Pigeon* court rejected the Government's contentions under factual

circumstances identical to those now before this Court.

The Government's attempt to distinguish *Pigeon* not only is inconsistent with the language of that opinion, it is illogical. If all the Government has to do to stop paying on a contract is to claim that a contractor is not performing properly, there is no need for a default clause in any contract. Default clauses would be mere surplusage under the Government's current theory, because the Government simply can end every contract without following any default procedures. No contract clause – and certainly not a default clause, however, should be considered mere surplusage. *Novamedix, Ltd v. NDM Acquisition Corp.*, 166 F.3d 1177, 1184 (Fed. Cir. 1999) ("such a construction would render all of these provisions mere surplusage at best, in conflict with established rules of contract interpretation").

Moreover, the Government does not even deign to address the numerous other cases which Pro-Mech has cited and which emphatically reject the Government's position about the meaning of *Pigeon*. In *Suburban Contracting Co. v. United States,* 76 Ct. Cl. 533 (1932), for example, the Government refused to pay a contractor contending that his work was late, specifically, that the "plaintiff was seven days in default of the completion of the contract" in December 1927, and that this default was "occasioning liquidated damages against the plaintiff in the sum of $ 20 a day and that in order to protect the Government for this daily increasing damages no payment would be made." *Id*., 76 Ct. Cl. at 542. Nevertheless, despite the fact that the Government had "concerns" about the current work (in the Government's parlance here) the Court readily concluded that "[t]he failure and refusal of the Government to make the payment for the work performed and the materials furnished during the month of December was a breach of the contract on the part of the defendant. . . ." *Id*., 76 Ct. Cl. at 543.

Alternatively, the Government seems to say[1] that its non-payment to Pro-Mech was sufficient to "show non-acceptance of proffered services" as opposed to its issuance of a "default" against the contractor, which the Government says distinguishes the case now before the Court from *John C. Kohler Co. v. United States*, 204 Ct. Cl. 777, 498 F.2d 1360 (1974). *See* Government Brief at pp. 5-6. However, in *John C. Kohler Co.,* the dispute with the Government also occurred"before final payment to plaintiff had been made," *id*., 204 Ct. Cl. at 780, 498 F.2d at 1361, *i.e.,* when the Government had not paid. In other words, the Government is once again attempting to distinguish case law which Pro-Mech cited by misstating the facts of the cited case.

As the foregoing demonstrates, the Government's first argument to avoid summary judgment is devoid of merit, completely.

**B. The Government Misstates the Law in Arguing that there is a "Genuine Dispute Whether Pro-Mech Repudiated the Contract"**

The Government in its Memorandum nowhere addresses the case law cited in Pro-Mech's Memorandum in Support of Motion for Summary Judgment against Defendant (filed September 10, 2004) concerning Pro-Mech's right to walk off the job on April 1, 2003. Instead, the Government argues that, because Pro-Mech walked off the job in April 2003, it repudiated the contract and justified the Government's withholding of money between November 15, 2002 and April 1, 2003. The Government's "retroactive repudiation" argument is, of course, absurd.

Pro-Mech nowhere claims a right to payments *after* April 1, 2003. If it did, then the Government might have a point about the need for a trial concerning the issues subsequent to April 1. There is no law anywhere in the land, however, including the cases cited in the

---

[1] We use the phrase "seems to say" because, frankly, it is difficult to decipher the Government's second point on this issue.

Government's Memorandum, that create a concept of "retroactive repudiation," as the Government argues here, which would preclude Pro-Mech from receipt of funds for the period of time before it walked off the job. Indeed, simply as a matter of simple logic, such an argument is completely off-the-wall.

For example, the Government's first citation to case law, *PCL Constr. Services, Inc. v. United States*, 47 Ct. Ct. 745, 809 (2000) *(see* Government's Memorandum at p. 6), states explicitly that a repudiation, if it occurs, "justified a termination for default for the portion of uncompleted work," *id*., but nowhere allows an argument about a retroactive repudiation permitting, in effect, a *retroactive* default. Nowhere, also, does *PCL* even address the issue here – the Government's abject refusal of payment without justification of a contract clause. In fact, *PCL* is completely consistent with Pro-Mech's position, because the payments withheld in *PCL* for which the contractor sued were contract retainages "permitted by contract clause 1.5.1 (Payments under Fixed-price Construction Contracts), subparagraph (e), which provides: The Contracting Officer may retain a maximum of 10 percent of the amount of the payment until satisfactory progress is achieved." *Id.,* 47 Ct. Cl. at 812. Here, as we have pointed out time and again, no contract clause permitted the Government to refuse payment to Pro-Mech.

The Government also cites *United States v. Dekonty Corp*., 922 F.2d 826, 828 (Fed. Cir. 1991). There, the issue was whether *the Government, not the contractor,* repudiated a contract by refusing to make required progress payments. The Court of Appeals held that the Government did not repudiate because it did not actually refuse to make the progress payments. *Id*., 922 F2d at 828-829 ("The Navy also processed and approved DeKonty's sixth payment request. As the [Resident Officer in Charge of Construction] explained at a hearing before the

Board, this action showed that the Navy considered the contract active. The Navy approved the sixth payment -- dated July 31, 1985 -- on August 9, 1985. This evidence shows that the Navy intended to make timely payments."). Here, the Government admits it would not make the monthly payments due to Pro-Mech. *Compare* Plaintiff's Proposed Findings of Uncontroverted Facts ¶s 12, 13, 14, 21, 27, with Defendant's Statement of Genuine Issues at ¶s 12, 13, 14, 21, 27. Thus, *Dekonty* too is on all fours with our case, and it is directly inapposite to the Government's position here.

The Government finally cites *Morganti National, Inc. v. United States,* 49 Fed. Cl. 110, 141 (2001), for the proposition that the "question of material breach" requires a trial about "the adequacy of Pro-Mech's performance and the handling of the dispute between the parties." *See* Government's Memorandum at p. 7. The Government is, once again, misstating the holding of a case. In *Morganti*, the court was not addressing a summary judgment issue. It was addressing a trial which already had occurred about the reasons for delayed payments by the Government. The contractor's performance was not at issue. *Id*., 49 Fed. Cl. at 141. And, the reason a trial was needed there was not because the payments were being refused, but only because they were late. *Id.* Indeed, as the court in *Morganti* noted:

> [the Court] recognizes that a 'prolonged failure to pay large amounts' could constitute a material breach. *Northern Helex Co. v. United States*, 197 Ct. Cl. 118, 125, 455 F.2d 546, 550 (1972). However, here, the evidence established that the [Federal Bureau of Prisons] never refused to pay Morganti; the FBOP merely delayed payment.

*Id.*

The Government here admits that it refused to pay Pro-Mech. Therefore, *Morganti*, like *PCL and Dekonty,* is consistent with Pro-Mech's position, and antithetical to the position

asserted here by the Government.

**C. The Government has Created no Genuine Disputes about Material Fact**

It is beyond cavil that summary judgment is appropriate if "there is no *genuine* issue as to any *material* fact and that the moving party is entitled to a judgment as a matter of law." RCFC 56(c); Fed. R. Civ. P. 56(c) (emphasis added). A fact is "material" if it will make a difference in the result of a case under the governing law. Irrelevant or unnecessary factual disputes do not preclude the entry of summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). A dispute is "genuine" when the evidence presents a disagreement sufficient to require submission to fact finding, as opposed to when the issues presented are so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby, Inc., supra*, 477 U.S. at 250-52; *Jay v. Sec'y of Dep't of Health and Human Servs*., 998 F.2d 979, 982 (Fed. Cir.), *reh'g denied, en banc declined* (1993).

Here, the Government does not dispute Pro-Mech's Statement of Undisputed Facts ¶s 1-5, 7-14, 18-22, and 26-27. *See* Defendant's Statement of Genuine Issues. While it attempts to dispute Facts 6, 15-17, 23-25 and 28, its disputes are not genuine and raises wholly immaterial issues, as we show immediately below.

**1. There is No Genuine, Material Dispute as to Fact 6**

Plaintiff's Proposed Findings of Uncontroverted Fact 6 states as follows:

> FAR 52.212-4 states that the Government has inspection and acceptance rights, but it must exercise them " within a reasonable time after the defect was discovered or should have been discovered." Exhibit 1 at p. 24 of 47.

The Government cannot possibly dispute this quote, which is precise. Instead, it claims that the inspection and acceptance rights addressed in this quote are post acceptance rights. *See*

Defendant's Statement of Genuine Issues at p. 2. That is accurate, but immaterial. The Government also states that the same contract clause requires delivery of conforming items. *Id.* That also is accurate, but immaterial. With respect to both these matters, the issue is that the Government has an obligation to reject anything " within a reasonable time after the defect was discovered or should have been discovered" if it believes them to be non-conforming. Otherwise, delivery of the services and their non-rejection is deemed conclusive under the parties' contract. Finally, the Government states that the clause has a disputes provision which requires the Contractor to proceed with work during a dispute. *Id.* That also is accurate, but immaterial given that Pro-Mech seeks payment only for the period *prior* to when it walked off the contract, not after it did so. In other words, Pro-Mech could have sought payments for the post April 1, 2003 period, in which case the Government and Pro-Mech could need to try issues about whether Pro-Mech should have walked off on April 1. But, Pro-Mech has chosen to seek only the payments it is due prior to April 1, which amount are owed as a matter of law.

Thus, the Government's attempt to create a genuine dispute fails, because none of the issues the Government raises are material to the matter before the Court.

**2. There is No Genuine, Material Dispute as to Facts 15 or 16**

Pro-Mech's Undisputed Facts 15 and 16 state as follows:

> 15. Pro-Mech called Norbert Cebula on numerous occasions asking about payment, and Mr. Cebula would always respond with an evasive answer that the money was being held up by some administrative paperwork issues in another office but, until the end, with an assurance that the invoices would be paid. Declaration of Kathryn Hibbert McLees, attached as Exhibit 7.
>
> 16. VAMC did not tell Pro-Mech why it would not pay the invoices. Exhibit 8, Excerpts of Cebula Dep. at p. 32 line 21 to p. 33, line 4.

The Government asserts that it disputes these statements, as indicated both in a

declaration Mr. Cebula recently prepared and in his deposition. *See* Defendant's Statement of Genuine Issues at p. 3. We urge the Court to review the Cebula Declaration and cited deposition transcript: these do not dispute Pro-Mech's statements of fact in any way, and indeed, by their own evasiveness (especially the new declaration), support Pro-Mech's otherwise subjective description of Mr. Cebula's evasiveness.

The Cebula declaration says only that Cebula did not "indicate that Pro-Mech deserved payment for the period in dispute or promise such payment." Pro-Mech never says that Cebula talked about what Pro-Mech "deserve[d]" or did not "deserve," and nowhere in his declaration does Cebula contest Pro-Mech's Statement of Uncontroverted Fact that he told Pro-Mech that the money was being held up by paperwork issues or would not be paid. In fact, in his deposition, he admitted that he would never actually give Pro-Mech the real reason for non-payment. ("Q. So, you stopped paying and you decided not to tell [Pro-Mech's president] why because you figured he had to figure it out himself; isn't that right . . . A. Yes." Cebula Dep. at pp. 22-23.)

Similarly, the cited portions of the Cebula deposition (pages 24, 29-31) address normal contract correspondence – task order lists. Nowhere do these cited deposition answers address Cebula's evasiveness in responding to Pro-Mech's requests for payment.

Thus, the Government fails to create any genuine dispute in this matter. *Sri Int'l v. Matsushita Elec. Corp*., 775 F.2d 1107, 1116 (Fed. Cir. 1985) ("The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or conclusory statements are insufficient").

**3. There is No Genuine, Material Dispute as to Fact 17**

Plaintiff's Uncontroverted Fact 17 states as follows:

> 17. On February 19, 2003, VAMC sent Pro-Mech a cure notice which, for the first time, expressed dissatisfaction with Pro-Mech's work. A copy of the cure notice is Exhibit 9.

The Government attempts to create a dispute about this fact by reference to (a) the same task order communications described immediately above in the Cebula deposition (pages 24, 29-31), (b) a statement by a non-contracting officer government employee (another mechanic) who claims he told Pro-Mech's on-site mechanic manager (Mr. Smith) about non-payment for non-performance in November, Willis Dep. at p. 10, line 23, and (c) a letter from Pro-Mech's lawyer dated December 5, 2002. *See* Defendant's Statement of Genuine Issues at pp. 3-4. The task order correspondence is already addressed immediately above, and is unrelated to notices of cure and the like. The mechanic's testimony about what he supposedly said in November is chronologically impossible given that the first unpaid invoice was not due until after December 15. *See* Plaintiff's Proposed Findings of Uncontroverted Fact ¶ 12 (a fact which the Government does not dispute). The December 5 letter from Pro-Mech's lawyer not only predates the overdue payment issue, but the letter only addresses a contract interpretation issue unrelated to the payment issue. *See* Exhibit 8 to the Government's Memorandum.

Once again, the Government fails to create any genuine, material dispute in this matter.

**4. There is No Genuine, Material Dispute as to Facts 23 or 24**

Following are Uncontroverted Facts 23 and 24:

> 23. On March 24, 2003, Mr. Cebula told Katherine Hibbert of Pro-Mech that the claim was warranted and would be paid. Exhibit 13.
>
> 24. On March 31, 2003, Mr. Cebula retracted the statement that the claim would be paid. Exhibit 14.

Plaintiff's support for these statements are contemporaneous documents, which Pro-Mech prepared and sent to Mr. Cebula at the time he made these statements. *See* Exhibits 13 and 14 to Plaintiff's Proposed Findings of Uncontroverted Facts. These statements by Cebula are not "hearsay" as asserted by the Government, *see* Defendant's Statement of Genuine Issues at p. 4, because admissions by the Government's contracting officer are not hearsay by definition. Fed. R. Evid. 801(d)(2)(D). Furthermore, the Cebula declaration which the Government cites to dispute these statements, s*ee* Defendant's Statement of Genuine Issues at p. 4, does not address Fact 24 in any way, and it obliquely addresses Fact 23, only if we assume that the word "deserve" is synonymous with the word "warranted." But, even if that is a dispute, it would be immaterial because Mr. Cebula nowhere states that he told Ms. Hibbert that the bills would *not* be paid.

So again, the Government fails to create any genuine, material dispute in this matter.

**5. There is No Genuine, Material Dispute as to Fact 25**

Fact 25 states as follows:

> 25. Effective April 1, 2003, Pro-Mech walked off the job because of VAMC's non-payment. Exhibit 14.

The Government contends that, while Pro-Mech walked off the job on April 1, the "parties disagree about the cause of the abandonment and the Government maintains that Pro-Mech was obligated to continue performance while the dispute was resolved." *See* Defendant's Statement of Genuine Issues at p. 5. We urge the Court to review Defendants' Statement of Genuine Issues to find a citation to evidentiary support for this alleged dispute. It will find none. A party cannot avoid summary judgment by making unsupported assertions. "The party opposing the motion must point to an evidentiary conflict created on the record; mere denials or

conclusory statements are insufficient." *Sri Int'l v. Matsushita Elec. Corp.*, 775 F.2d 1107, 1116 (Fed. Cir. 1985). Moreover, the issue about whether Pro-Mech "was obligated to continue performance" is a legal, not a factual issue. Only factual issues can prevent summary judgment; the Court decides the legal issues on the basis of the facts. Fed. R. Civ. P. 56(c).

**6. There is No Genuine, Material Dispute as to Fact 28**

Fact 28 states as follows:

> 28. During the period of time from November 15, 2002 to April 1, 2003, VAMC allowed Pro-Mech to have people on the job, allowed Pro-Mech to proceed with the Contract, accepted work from Pro-Mech and the benefit of that work, and never sent Pro-Mech a notice of rejection of the work. Exhibit 8, Excerpt of Cebula Dep. at p. 33, line 14 to p. 34, line 18.

The Government attempts to dispute this statement by asserting that Mr. Cebula did not accept the allegedly non-conforming part of Pro-Mech's work and issued his cure notice in February 2003 (*i.e.,* prior to April 1, 2003). *See* Defendant's Statement of Genuine Issues at p. 5. The first part of this assertion is a conclusion of law, given that the issue of how Cebula accepts or rejects work is determined by the contract, and there are no facts which show that Cebula complied with FAR 52.212-4, which the Contract incorporated and which states that the Government has inspection and acceptance rights, but it must exercise them " within a reasonable time after the defect was discovered or should have been discovered." Exhibit 1 at p. 24 of 47. Moreover, neither the first nor the second part of the Government's assertion dispute the stated facts that (a) VAMC allowed Pro-Mech to have people on the job, (b) allowed Pro-Mech to proceed with the Contract, (c) accepted work from Pro-Mech and the benefit of that work, and (d) never sent Pro-Mech a notice of rejection of the work. Therefore, the Government has again failed to create any genuine, material dispute in this matter.

**Conclusion**

For the foregoing reasons, Pro-Mech is entitled to summary judgment in its favor. The law is clear, and there is no genuine dispute as to any material fact.

Respectfully submitted,

s/ Edward J. Tolchin

EDWARD J. TOLCHIN
Fettmann, Tolchin & Majors, P.C.
10509 Judicial Drive, Suite 300
Fairfax, VA 22030
(703) 385-9500
(703) 385-9893 (fax)
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of October 2004, a copy of the foregoing Plaintiff's Reply Memorandum in Support of Motion for Summary Judgment was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Edward J. Tolchin
Edward J. Tolchin